ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 0 7 2018

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

Donna Mae Amina, Pro Se
Melvin Keakaku Amina
2304 Metcalf Street 2
Honolulu, HI  96822
(808) 949-5215

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MELVIN KEAKAKU AMINA AND DONNA MAE AMINA, HUSBAND AND WIFE, | ) ) ) | Case No. CV 18-00143 DWK-KSC (Breach of Contract) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WMC MORTGAGE CORP.;  et al., | ) ) | JUDGE: Hon. Derrick K. Watson |
| Defendants. | ) | TRIAL: None Set. |

------------------------------------------------------------------------------------------

**RESPONSE TO [14] DEFENDANTS JPMORGAN CHASE BANK, N.A., Individually and as Servicer of the JPMORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2; JPMORGAN CHASE & CO.; J.P. MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN MORTGAGE ACQUISITION CORP.; J.P. MORGAN SECURITIES LLC; U.S. BANK NATIONAL ASSOCIATION, as Trustee for J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET BACKED PASSTHROUGH CERTIFICATES, SERIES 2006-WMC2; MERSCORP HOLDINGS, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS MELVIN KEAKAKU AMINA AND DONNA MAE AMINA'S COMPLAINT FILED ON MARCH 15, 2018 ([26]-[27] joined by NATIONWIDE TITLE CLEARING, INC.)**

------------------------------------------------------------------------------------------

Plaintiffs Donna Mae Amina and Melvin Keakaku Amina respond to [14] DEFENDANTS

JPMORGAN CHASE BANK, N.A., Individually and as Servicer of the JPMORGAN

MORTGAGE ACQUISITION TRUST 2006-WMC2; JPMORGAN CHASE & CO.; J.P.

MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN MORTGAGE ACQUISITION

CORP.; J.P. MORGAN SECURITIES LLC; U.S. BANK NATIONAL ASSOCIATION, as

Trustee for J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET

BACKED PASSTHROUGH CERTIFICATES, SERIES 2006-WMC2; MERSCORP HOLDINGS,

INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO

DISMISS PLAINTIFFS MELVIN KEAKAKU AMINA AND DONNA MAE AMINA'S

COMPLAINT FILED ON MARCH 15, 2018 ("Motion") ([26]-[27] joined by NATIONWIDE

TITLE CLEARING, INC.).

    As a threshold matter, Nationwide was and is estopped from [26]-[27] joining a Motion to

Dismiss because Nationwide already filed an Answer in state court.

    The Motion has its own version of the facts, titled "SUMMARY OF BACKGROUND

FACTS," however, on a Motion to Dismiss, the facts are to be drawn from the Complaint and

viewed in the light most favorable to the non-moving party.

### *THE CLAIMS COULD NOT HAVE BEEN BROUGHT EARLIER*

    The Memorandum states on page 14:

    The Plaintiffs' claims in the current lawsuit are the same claims they brought in
    their First Lawsuit and Second Lawsuit or are claims that could have been brought
    in those actions.

**However, the Assignment was recorded on April 4, 2012 (signature date 3/22/2012). This was**

**after the November 28, 2011 filing date of the Second Lawsuit. Since the ONLY facts**

**considered in a lawsuit are the facts that existed on the date of filing of the complaint in that**

**lawsuit, no litigation about the Assignment could have occurred during the First or Second**

Lawsuit.

It is ONLY through the Assignment that the new defendant ("U.S. Bank as Trustee...") claims privity with the previous defendant ("MERS as nominee for WMC Mortgage Inc..."). However, there is a slew of problems with the Assignment, including that MERS as nominee for the defunct and successorless WMC did not have the authority to assign to US Bank as trustee (particularly without naming the successor) (and without paying consideration). Naturally, these problems could not properly have been addressed in the Second Lawsuit, as the Assignment did not exist on the date of filing of that lawsuit. The Current Lawsuit is the only one that may properly deal with the Assignment.

In addition, every single one of the Defendants in the Current Case is new and different from the Defendants in the First Lawsuit and the Second Lawsuit. A Trustee is not the Trust.

The Memorandum states on page 10:

> Based on the allegations raised in the current Complaint, there is no question that the Plaintiffs are asserting claims arising from the **same property** and mortgages that were at issue in the First Lawsuit and the Second Lawsuit.

However, the legal description in the current Complaint is different from the legal description in the First and Second Lawsuit.

*QUIET TITLE IS NOT BARRED BY RES JUDICATA BECAUSE THE "FINAL" JUDGMENT IS VOID*

The Memorandum states on pages 16-19:

> Despite not prevailing on their two prior quiet title claims, the Plaintiffs have asserted a quiet title lawsuit once again in this current lawsuit. ... [this] identical claim[] [is] barred by res judicata. ... the dismissals in both the First Lawsuit and the Second Lawsuit constitute dismissals on the merits.

3

RESPONSE TO [14] MTD

However, the quiet title claim is NOT barred. The [164] Order in the Second Case, concluding that

US Bank is the mortgagee and granting Summary Judgment on the Quiet Title claim against US

Bank, is void, and the Sixth Cause of Action requests the Court to vacate it.

### *THERE IS NO PRIVITY BETWEEN THE PARTIES*

Page 17 of the Memorandum cites Niutupuivaha v. Wells Fargo Bank, N.A., which cites In

re Dowsett Trust, 7 Haw. App. 640, 646, 791 P.2d 398, 402 (1990) for the proposition that under

Hawai'i law, the "concept of privity has moved from the conventional and narrowly defined

meaning of mutual or successive relationships to the same rights of property to merely a word used

to say that the relationship between one who is a party of record and another is close enough to

include that other within res judicata."

However, this is circular reasoning, or a circular definition: in order to determine whether a

party is close enough to be included within res judicata, we look to whether the parties are in

privity; and the Dowsett court merely tells us that they are in privity if they are close enough.

There are no facts or criteria to guide our inquiry.

The Memorandum states on page 19:

> The instant litigation names the JPMorgan Mortgage Acquisition Trust 2006-
> WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2. See Exhibit
> A. This party is the same party named in the Second Lawsuit except that the
> Plaintiffs neglected to reference U.S. Bank as the Trustee in the current case.

However, the Trust is not the same entity as the Trustee, and they are not in privity. Plaintiffs did

not "neglect" to name U.S. Bank; instead, Plaintiffs intended to name the Trust.

### *A COURT MAY NOT TAKE JUDICIAL NOTICE OF THE TRUTH (OR FALSITY) OF*

### *PUBLIC RECORDS*

4

The Memorandum requests that Court take judicial notice of certain public records. However:

For a fact to be judicially noticed, "indisputability is a prerequisite." <u>Hennessy v. Penril Datacomm Networks</u>, 69 F.3d 1344, 1354 (7th Cir. 1995). The power to judicially notice facts "is to be exercised by courts with caution. . . . Every reasonable doubt upon the subject should be resolved promptly in the negative." <u>Brown v. Piper</u>, 91 U.S. 37, 42-43 (1875).

The Memorandum states: "Federal Rules of Evidence Rule 201 allows a court to take judicial notice of "a fact ..." However, the Memorandum never requests the Court to take judicial notice of any **facts**.

Similarly, the Memorandum states: "[i]n the context of a motion to dismiss, a court may take judicial notice under Fed. R. Evid. 201 of 'matters of public record' ..."

The factual "matters" appropriate for judicial notice would be the existence of the public records in question, and the language used, but not the truth (or falsity) of their contents.

"Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." <u>Joslin v. HA.S. Ins. Brokerage,</u> 184 Cal. App. 3d 369, 374 (1986). "[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced there from, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow there from." (citations omitted). <u>Mangini v. R. J Reynolds Tobacco Co.,</u> 7 Cal. 4111 1057, 1062 (1994) (emphasis added). While courts can take judicial notice of public records, they do not take notice of the truth of matters stated therein. <u>Love v. Wolf</u>, 226 Cal. App.

2d 3 78, 403 (1964). In addition, "when judicial notice is taken of a document ... the truthfulness

and proper interpretation of the document are disputable." StorMedia, Inc. v. Superior Court, 20

Cal. 4111 449, 457, fn. 9 (1999). A California court considered the scope of judicial review of a

recorded document in Poseidon Development, Inc. v. Woodland Lane Estates, LLC, 152

Cal.App.4th 1106 (2007):

> [T]he fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. For example, the First Substitution recites that Shanley 'is the present holder of beneficial interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact, because it is hearsay and it cannot be considered not reasonably subject to dispute." (Id. at p. 1117.)

See also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that district

court **improperly** took judicial notice of disputed facts recited within public record documents).

**This case was cited by the Memorandum (page 5) to support taking judicial notice of the**

**facts recited within public record documents.**

"Courts may take judicial notice of publications introduced to 'indicate what was in the

public realm at the time, not whether the contents of those articles were in fact true.'" Premier

Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 401 n.15 (3d Cir. 2001); accord Heliotrope

Gen. Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.118 (9th Cir. 1999) (taking judicial notice "that

the market was aware of the information contained in news articles submitted by the defendants.").

"These publications meet the standards for admissibility set forth in Federal Rule of

Evidence 201(b). Accordingly, we take judicial notice of them solely as an indication of what

information was in the public realm at the time." Von Saher v. Norton Simon Museum of Art at

Pasadena, 578 F.3d 1016, 1022 (9th Cir. August 19, 2009). Further, "the Museum fails to point to

any authority which holds that a motion to dismiss based on a statute of limitations may be granted

on the basis of facts judicially noticed, rather than facts apparent on the face of the complaint. ...

Unless it is clear that the complaint could not be saved by amendment, dismissal with prejudice

and without leave to amend is not appropriate. Accordingly, Saher's complaint **should not have**

**been dismissed** without leave to amend." Id. at 1031.

In <u>United States v. 14.02 Acres of Land</u>, the District Court took judicial notice of the

Department of Energy National Transmission Grid Study (May 2002), and

> "it referred to the report only as background material, without relying on it to
> resolve any factual dispute.    We therefore conclude that the district court did not
> abuse its discretion in taking judicial notice of the DOE Study for the limited
> purpose for which the court considered it."

The case of <u>Disabled Rights Action Comm. v. Las Vegas Events, Inc.</u>, 375 F.3d 861, 866 n.

1 (9th Cir 2004) was [107] dismissed with prejudice after [94] notice of voluntary dismissal by the

plaintiff. On appeal, the key phrase is:

> [Defendant Las Vegas] Events has filed an **unopposed motion** for judicial notice of
> an unredacted copy of the licensing agreement in effect at the time the district court
> ruled on the joinder motion, as well as of the current licensing agreement. We grant
> the motion. These licensing agreements are documents of the University System, a
> state entity.

Footnote 1 of <u>Disabled Rights</u> states:

> The district court record includes only a redacted License Agreement indicating that
> Events contracted with University System for permission to present the Rodeo at
> the Center every year from 1993 through 2000. The License Agreement that is
> currently in effect was not part of the district court record. Events has filed an
> **unopposed motion** for judicial notice of an unredacted copy of the licensing
> agreement in effect at the time the district court ruled on the joinder motion, as well
> as of the current licensing agreement. We grant the motion. These licensing
> agreements are documents of the University System, a state entity. Under Federal
> Rule of Evidence 201, we may take judicial notice of the records of state agencies
> and other **undisputed matters** of public record. See <u>Lee v. City of Los Angeles</u>,
> 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice
> matters of public record **unless the matter is a fact** subject to reasonable dispute);
> <u>Kottle v. N.W. Kidney Ctrs.</u>, 146 F.3d 1056, 1064 n. 7 (9th Cir.1998) (holding that

RESPONSE TO [14] MTD

state health department records were properly judicially noticed); <u>Mack v. S. Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may take judicial notice of records and reports of state administrative bodies), overruled on other grounds by <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

<u>Disabled Rights</u> relies on <u>Lee v. City of Los Angeles</u>, which **reversed** judicial notice:

> More importantly, the district court's decision **to dismiss** plaintiffs' federal claims was rooted in defendants' factual assertions. **In granting defendants' motions, the [district] court** assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, **took judicial notice of the truth of disputed factual matters**, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. **We therefore also reverse** the district court's dismissal of plaintiffs' § 1983 claims ...

At any rate, the proposition (that "a court may judicially notice matters of public record" such as deed of trust, substitution of trustee, election to sell and other recorded documents) is ambiguous as it is not clear whether the <u>Disabled Rights</u> court took judicial notice of the "matters of public record" (i.e. the existence of the documents) or of the truth of their contents.

To the extent that the contents of Defendants' documents are not alleged in the Complaint, the <u>Branch</u> rule does not apply to those documents. See <u>Branch v. Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1994):

> ... **documents whose contents are alleged in a complaint** and whose authenticity no party questions, but which are not physically attached to the pleading, may be **considered** in ruling on a Rule 12(b)(6) ...

To "consider" means to examine a document (e.g. to determine whether it is defamatory), not to assume its contents true. <u>Knievel v. ESPN</u>, 393 F.3d 1068 (9th Cir. 2005).

Here, the contents of the documents at issue are not alleged in the Complaint, therefore the rule of <u>Branch</u> does not apply to those documents.

The Court may take judicial notice of the dates, parties, and legally operative language of

8

these documents, **but not the truth of various factual representations made in the documents**.

Permito v. Wells Fargo Bank, 2012 WL 1380322, *2 (N.D. Cal. Apr. 20, 2012).

The Ninth Circuit, in the 14.02 Acres case, stated:

> [10] The district court also did not abuse its discretion in taking judicial notice of the Department of Energy National Transmission Grid Study (May 2002) ("DOE Study"), which was not included in the pleadings, and referring to it as background material in its order granting the government's motion for judgment on the pleadings. ... Judicial notice is appropriate for records and "reports of administrative bodies." Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1954). The district court considered the DOE Study, which is clearly a "report[ ] of [an] administrative bod[y]." Id. Further, it **referred to the report only as background material, without relying on it to resolve any factual dispute. We therefore conclude** that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it.

The Ninth Circuit explicitly stated that its approval of the district court's judicial notice of the public record was because it "referred to the report only as background material, without relying on it to resolve any factual dispute." Here, by contrast, Defendants wish to use the disputed records to resolve a factual dispute.

The extent of the discussion of this issue in Valasquez is:

> Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of these documents as they are matters of public record. See W. Fed. Sav. v. Heflin, 797 F.Supp. 790, 792 (N.D. Cal.1992) (taking judicial notice of documents in a county public record, including deeds of trust); see also Mack, 798 F.2d at 1282 (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record).

The case relied on, Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) was only about "state administrative records" and states:

> South Bay requested the district court to take judicial notice of the state administrative records attached to the motion to dismiss as exhibits. ... a court may take judicial notice of facts outside the pleadings. Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., 245 F.2d 67, 70 (9th Cir.1956); 5 C. Wright & A.

Miller, Federal Practice & Procedure, Sec. 1363 at 659-60 (1969). [footnote: Mack, himself, relied on this precedent in requesting the district court to take judicial notice of the same administrative records in opposing the motion to dismiss his pendent state law claim.] Moreover, a court may take judicial notice of "records and reports of administrative bodies." Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir.1953).

Heflin relies on Grant v. Aurora Loan Servs., Inc., No. CV 09-08174, 20 2010 WL 3517399, at *3 (C.D. Cal. Sept. 10, 2010) (citing numerous cases where the court took judicial notice of assignments of deeds of trust, notices of default, and notices of trustee's sale). Grant (in which there was no dispute about the trustee's deed, and the other documents noticed were certificates of incorporation, certificates of good standing, and lists of corporate officers) relies on 14.02 Acres, and states:

Aurora requests that the court take judicial notice of the following documents: the trustee's deed on sale for the Woodland Hills property, the Federal Stock Charter for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order Approving Aurora Loan Services as an Operating Subsidiary of Lehman Brothers Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB, a certification by the Delaware Secretary of the State authenticating the certificate of incorporation for Aurora Loan Services Inc., filed May 15, 1997, Aurora's certificate of conversion from a corporation to an LLC, and a certificate of amendment changing Aurora's Certificate of Formation to reflect its designation as a limited liability company.

The [Grant] court likewise takes judicial notice of the documents defendants proffer regarding Aurora's incorporation and conversion to an LLC - the Federal Stock Charter for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order Approving Aurora Loan Service as an Operating Subsidiary of Lehman Brothers Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB, the certification by Delaware Secretary of State authenticating the certificate of incorporation for Aurora Loan Services Inc. filed May 15, 1997, Aurora's certificate of conversion from a corporation to an LLC, and the certificate of amendment recording the change of Aurora's corporate form and designation in its Certificate of Formation. See FED. R. EVID. 201(b) (stating that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); see also McCall v. Scott, 239 F.3d 808, 814 n. 3 (6th Cir. 2001) ("[W]e take judicial notice of the Restated Certificate of Incorporation"); McMichael v. U.S. Filter Corp., No. ED CA 99-182VAP, 2001

WL 418981, *8 (C.D. Cal. Feb. 23, 2001) (taking judicial notice of a certificate of incorporation filed in Delaware); Redding v. Freeman Products, Inc., No. 94 C 398, 1995 WL 410922, *2 (N.D. Ill. July 10, 1995) (taking judicial notice of certificates of good standing filed with the Illinois Secretary of State); Access 4 All v. Oak Spring, Inc., No. 504CV75OCGRJ, 2005 WL 1212663, *2 n. 16 (M.D. Fla. May 20, 2005) (taking judicial notice of the records of the Florida Department of State, Division of Corporations, which reflected that one plaintiff was an officer and director of the other); In re Teledyne Defense Contracting Derivative Litigation, 849 F.Supp. 1369, 1383 (C.D. Cal. 1993) (stating that "[p]laintiffs' claim for negligent breach of fiduciary duty against the Directors is barred by the Corporation's Certificate of Incorporation (of which this Court may take judicial notice)"); see also Banks v. Consumer Home Mortgage, Inc., No. 01-CV-8508 (ILG), 2003 WL 21251584, *6 n. 7 (E.D.N.Y. Mar. 28, 2003) ("Plaintiffs submitted a public record on file with the Secretary of State for Georgia, where CHM lists Michael Ashley as the Chief Financial Officer of CHM. This Court can take judicial notice of this official filing by CHM").

Footnote 37 of Grant states:

As the complaint refers to or necessarily relies on records related to the sale of plaintiff's property, and as neither party disputes the authenticity of the records, they may also be considered under the incorporation by reference doctrine.

## DOCUMENTS ARE NOT FACTS

Defendants have requested the Court to take judicial notice, not merely of "facts" (F.R.E. 201), but of documents. See Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642 (7th Cir. July 21, 2011) (judicial notice declined because the movants "sought judicial notice not of particular discrete facts, but of a number of whole documents.") Yet Defendants do not explain what factual propositions are supposed to be supported by these documents.

The Court may take judicial notice of the existence of documents in the public record, and of the language of those documents. The Court may not, however, at this stage, take judicial notice of the truth or falsity of the contents of those documents.

The Federal Rules of Evidence, Rule 201(b) states:

The court may judicially notice a fact that is not subject to reasonable

dispute because it:

> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned.

The **existence** and **language** of the documents within the public record can be accurately and readily determined by consulting the records maintained by their official custodian.

Long before the effective date of the Federal Rules, a controversy raged on whether judicial notice of adjudicative facts should be confined to substantially indisputable facts or to facts that are unlikely to be disputed. Even the evidence greats were divided on the issue: Professors Morgan and McCormick argued that judicial notice should be confined to indisputables[1] while Professors Thayer, Wigmore, and Davis contended that judicial notice should extend to facts that are somewhat less absolute.[2] Both sides muster cogent arguments to support their positions and both contend that the weight of existing case law supports their views.[3] A substantial split also exists among the states on this issue.[4] In providing that "[a] judicially noticed fact must be one not subject to reasonable dispute,"[5] the Federal Rules followed the Morgan-McCormick view requiring substantial indisputability. The Advisory Committee's note on the federal rule stated that this more stringent standard was based upon "the theory that these considerations call for

---

[1] See MCCORMICK'S HANDBOOK I, supra note 9, § 330, at 710·11 (taking issue with the Wigmore-Thayer view of judicial notice and arguing that "the weight of reason and the prevailing authority" dictate that judicial notice be confined to indisputable facts); John T. McNaughton, Judicial Notice-Excerpts Relating to the Morgan-Wigmore Controversy, 14 VAND. L. Rev. 779, 779 (1961) (noting that Morgan's view restricts judicial notice to "patently indisputable" matters).
[2] See Kenneth C. Davis, A System of Judicial Notice Based on Fairness and Convenience, in PERSPECTIVES OF LAW 69 (Roscoe Pound et al. eds., 1964), at 76-78 (propounding the Wigmore-Thayer view and arguing that trial judges should entertain evidence which contradicts judicially noticed facts); McNaughton, supra note 48, at 805 (concluding that the Wigmore-Thayer view allows courts to judicially notice matters which are "somewhat disputable but unlikely to be disputed").
[3] See McNaughton, supra note 48, at 796 n.3.
[4] See Carla A. Neely, Note, Judicial Notice: Rule 201 of the Federal Rules of Evidence, 28 U. FLA. L. Rev. 723, 758 nn.203-04 (1976) (citing decisions of several states).
[5] FED. R. EVID. 201(b).

RESPONSE TO [14] MTD

dispensing with traditional methods of proof only in clear cases."[6]

In <u>Knievel v. ESPN</u>, 393 F.3d 1068 (9th Cir. 2005), the issue was whether a certain

photograph and caption of Evel Knievel, which included the word "pimp" and which was posted

on ESPN's website, was defamatory – not whether the contents of the documents incorporated by

reference were true.[7]

Plaintiffs hereby question the authenticity of all of Defendants' proffered documents.

The court should at most take judicial notice of the existence of Defendant's documents

and of the language used, but should not assume the truth of any of their contents.

The key portion of <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir.2001)

(explaining that a court may judicially notice matters of public record unless the matter is a fact

subject to reasonable dispute) is:

> In granting defendants' motions, the court assumed the existence of facts that favor
> defendants based on evidence outside plaintiffs' pleadings, took judicial notice of
> the truth of disputed factual matters, and did not construe plaintiffs' allegations in
> the light most favorable to plaintiffs. We therefore also reverse the district court's
> dismissal of plaintiffs' § 19S3 claims alleging violations of the First, Fourth, and
> Fourteenth Amendments on these independent grounds. ...
>
> Here, defendant NYSDCS attached several exhibits to its motion to dismiss,
> including declarations from three NYSDCS employees. ...
>
> In granting defendants' motions to dismiss, ... the court stated "this case apparently
> presents the relatively unique situation of an innocent person who attempted to pass
> himself off as an escaped prisoner." Neither the Original Complaint nor the First
> Amended Complaint contain any allegation that Kerry Sanders ever told anyone
> that he was Robert Sanders, let alone that he wanted to pass himself off as Robert
> Sanders. Thus, for purposes of the Rule 12(b)(6) motions to dismiss, there was no
> basis for the district court to make the factual finding that Kerry Sanders "attempted
> to pass himself off as [the] escaped prisoner" Robert Sanders.

---

[6] FED. R. EVID. 201 advisory committee's note, subdiv. (b).

[7] <u>Knievel</u> is "an odd case for a court to cite for the proposition that it could take judicial notice when (a) the majority
didn't explicitly take judicial notice; and (b) the dissent had a pretty good argument that the majority could not have
taken judicial notice." –Asst. Prof. Colin Miller, John Marshall School of Law (Chicago)

... the district court also erred by taking judicial notice of disputed matters. The court took judicial notice of two documents: (1) the Waiver of Extradition form, according to which Kerry Sanders purportedly "intelligently, knowingly, and voluntarily" waived his right to challenge his extradition and admitted being Robert Sanders; and (2) the transcript of the extradition hearing at which Kerry Sanders stated that he purportedly understood the rights he was giving up by signing the waiver.

... the district court had authority under Rule 201 to take judicial notice of the fact of the extradition hearing, the fact that a Waiver of Extradition was signed by Kerry Sanders, and the fact that Kerry Sanders purportedly waived his right to challenge his extradition to New York as "Robert Sanders."

But the court did more than take judicial notice of undisputed matters of public record. The court took judicial notice of disputed facts stated in public records. Indeed, the court relied on the validity of Kerry Sanders's Waiver of Extradition in dismissing plaintiffs' § 1983 claims at the pleading stage. As the district court stated: "Sanders personally waived his right to contest extradition and informed the court and counsel that he was, in fact, the Robert Sanders sought in New York." ...

Here, the district court incorrectly took judicial notice of the validity of Kerry Sanders's waiver, which was as yet unproved. ...

Accordingly, we hold that the district court erred in granting the City's motion to dismiss plaintiffs' § 1983 claims under the First, Fourth, and Fourteenth Amendments by relying on extrinsic evidence and by taking judicial notice of disputed matters of fact to support its ruling.

The disputed facts in Lee were whether Kerry Sanders' waiver was valid. There is no

indication that the Lee plaintiff disputed any of those facts. Therefore, Lee contradicts the

principle urged by Defendants: that judicial notice supposedly must be taken unless the

opposing party puts some contrary evidence before the court—within the time limit for a

response to a motion and without opportunity for discovery, no less.

The Memorandum states on page 10:

Based on the allegations raised in the current Complaint, there is no question that the Plaintiffs are asserting claims arising from the same property and mortgages that were at issue in the First Lawsuit and the Second Lawsuit.

14

RESPONSE TO [14] MTD

However, the standard is not whether the "property and mortgages" are the same, but whether the

**facts** are the same (and the property is NOT the same, as the legal description is different).

> The Memorandum states on page 24:
>
> The Plaintiffs' allegations in the current Complaint indicate that they are trying to create new causes of action by continuing to dispute the same debt and re-raise the same issues that they lost in their prior two lawsuits.

It is true that Plaintiff continued to dispute the same debt. However, Defendants could have

properly responded to Plaintiffs' dispute letters. They did not. Instead, Defendants committed fresh

violations of the FDCPA, and Plaintiffs complain within the one-year statute of limitations. See ¶¶

398-403 (violation committed 30 days after November 7, 2017).

> The Memorandum states on page 27:
>
> As to the purportedly fraudulent letters sent by Chase, Plaintiffs failed to identify the dates of the specific letters that they claim were unfair or deceptive because they were sent under the pseudonym "Chase."

However, the Complaint at ¶ 352 (and Exhibit D) identifies October 16, 2017; at ¶ 355 (and

Exhibit F) identifies November 20, 2017; at ¶ 356 (and Exhibit G) identifies December 11, 2017.

> The Memorandum states on page 27:
>
> Because the Plaintiffs have been receiving letters from Chase about their account since at least February 3, 2010, any UDAP claim arising from Chase's efforts to communicate with the Plaintiffs should have been brought by February 3, 2014.

However, the UDAP does not lump all correspondence together the way Defendants wish it would,

in such a way that the statute of limitations for all future correspondence is set in stone by the first

letter.

> The Memorandum states on page 27:
>
> ... the Plaintiffs' claims also fail because they have not demonstrated how Chase

RESPONSE TO [14] MTD

sending them letters violates Chapter 480.

However, the use of fake names (such as "CHASE") to write letters of the type alleged is clearly

immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers.

The Memorandum states on page 29:

Thus, Plaintiffs do not and cannot dispute that the loan at issue in this case was, at
the latest, in place or consummated by March 6, 2006.

However, a loan is "consummated" when the funds are disbursed from the party identified as the

lender to the party identified as the borrower. There is no allegation in the Complaint as to when

this occurred, or even THAT it occurred; see ¶¶ 60-61, 93, 171, 173, 186-188, 230-232; see also ¶¶

226-228.

The Memorandum states on page 30:

Plaintiffs do not cite to any specific statutory or contractual provision that requires
the Defendants to provide them an accounting.

However, a Complaint need not cite law. A Complaint need only state facts. See <u>Conley v. Gibson</u>

(as amended).

## CONCLUSION

The Complaint states a claim upon which relief can be granted. The Motion should be

denied.

In the alternative and without waiving the foregoing, leave to amend should be given,

because amendment would NOT be futile as there are facts which Plaintiffs have yet to allege

(including facts showing that the Assignment is void—which facts certainly could not have been

alleged in the Second Lawsuit which was filed before the Assignment existed—as well as the fact

16

RESPONSE TO [14] MTD

that the address for U.S. Bank given in the Assignment is the address of "JPMorgan Chase Bank, N.A." in the records of the New York City Department of Finance[8]—as well as facts yet to be discovered), and in a subsequent Complaint, Plaintiffs would clarify that the [164] Order in the Second Case, concluding that US Bank is the mortgagee and granting Summary Judgment on the Quiet Title claim against US Bank, is void, and that the Sixth Cause of Action requests the Court to vacate it.

Executed on this 7th day of June, 2018.

/s/_____

Donna Mae Amina, Pro Se

/s/_____

Melvin Keakaku Amina, Pro Se

_____

[8] That address is: 700 Kansas Lane MC 8000, Monroe, LA 71203

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the following date, I served a copy of the

foregoing on the following parties by fax and/or U.S. first class mail:

MICHAEL R. MARSH
MARK G. VALENCIA
Case Lombardi & Pettit
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Attorneys for Defendant
**NATIONWIDE TITLE CLEARING, INC.**

CRYSTAL K. ROSE, ESQ.
ADRIAN L. LAVARIAS, ESQ.
GEORGIA ANTON, ESQ.
Bays Lung Rose & Holma
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Attorneys for Defendants
**J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2;
CHASE; J.P. MORGAN CHASE & CO.; J.P. MORGAN CHASE
BANK N.A.; J.P. MORGAN CHASE BANK, N.A. s/b/m CHASE
HOME FINANCIAL LLC, J.P. MORGAN ACCEPTANCE
CORPORATION; J.P. MORGAN MORTGAGE ACQUISITION
CORP.; J.P. MORGAN MORTGAGE ACQUISITION CORP. 2006-
WMC2; J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC2 A; J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC2, ASSET-BACKED PASS-THROUGH CERTIFICATES,
SERIES 2006-WMC2; J.P. MORGAN SECURITIES INC.;
MERSCORP HOLDINGS, INC.; and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.**

DATED:  June 7, 2018

_____
Kanani Amina

18

RESPONSE TO [14] MTD