IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MELVIN KEAKAKU AMINA and DONNA MAE AMINA,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>WMC FINANCE CO., *et al.*,<br><br>　　　　　Defendants. | CIVIL NO. 18-00143 DKW-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |

## <u>INTRODUCTION</u>

In an effort to invalidate a mortgage that is currently the subject of a pending foreclosure action, the Aminas, proceeding pro se, bring claims against several creditors and/or servicing entities alleging violations of federal and state law. This is the Aminas' third action filed in this district court concerning this mortgage transaction. Defendants seek dismissal of the Aminas' claims under the doctrines of claim and issue preclusion or, alternatively, for failure to state a claim. Because the requirements of claim and issue preclusion have been met, and because Plaintiffs' claims are additionally time-barred or fail to state a claim, the Court GRANTS Defendants' Motions. Plaintiffs are granted limited leave to amend claims that are not precluded or time-barred, with instructions below.

1

# BACKGROUND

The Aminas bring claims against JPMorgan Chase Bank, N.A. ("Chase"),[1] Mortgage Electronic Registration Systems, Inc. and MERSCORP Holdings, Inc. (collectively, "MERS"), Nationwide Title Clearing, Inc. ("NTC"), and WMC Finance Co.,[2] asserting eight causes of action: a quiet title claim; a Fair Debt Collection Practices Act claim ("FDCPA"); a Real Estate Settlement Procedures Act claim ("RESPA"); an accounting claim; an Unfair and Deceptive Trade Practices claim under HRS Chapter 480 ("UDAP"); a Relief From Judgment claim under FRCP 60; a Truth In Lending Act claim ("TILA"); and a Declaratory Judgment claim. Chase and MERS filed a Motion to Dismiss, Dkt. No. 14, and NTC filed a substantive joinder in that Motion, Dkt. No. 26.

In light of the substantial record of litigation involving the Aminas' property and subject loans, the Court first recounts the earlier lawsuits between the parties, before addressing the present claims.

---

[1] The Court refers collectively to Defendants JPMorgan Chase Bank, N.A., Individually and as Servicer of the JPMorgan Mortgage Acquisition Trust 2006-WMC2; JPMorgan Chase & Co.; J.P. Morgan Acceptance Corporation I; J.P. Morgan Mortgage Acquisition Corp.; J.P. Morgan Securities LLC; and U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2 as the "Chase Defendants" or simply "Chase."

[2] The Complaint alleges that WMC Finance Co. is not the proper successor of the Aminas' original lender, WMC Mortgage Corp., which "went out of business without a successor." Compl. ¶¶ 16–21. No WMC entity has made an appearance in this matter.

# I. Prior Lawsuits

The Aminas' claims relate to the same Mortgage on their real property, located at 2304 Metcalf Street #2, Honolulu, Hawaii 96822 ("Property") that is at issue in a pending foreclosure proceeding[3] and in two prior matters in this district court that were decided in defendants' favor.[4]   *See* Compl. ¶ 203, Dkt. No. 1-1.   On March 20, 2010, the Aminas filed the first lawsuit, *Melvin Keakaku Amina, et al. v. WMC Mortgage, Corp. et al.*, Civil No. 10-00165 JMS-KSC (the "First Lawsuit"). The second case, entitled *Melvin Keakaku Amina, et al. v. The Bank of New York Mellon, fka The Bank of New York, et al.*, Civil No. 11-00714 JMS-BMK (the "Second Lawsuit"), was filed on November 28, 2011.   Those cases challenged the validity of their Mortgage and sought to quiet title.

---

[3]Plaintiff U.S. Bank N.A., As Trustee For J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2, initiated a judicial foreclosure proceeding on April 5, 2018 in the Circuit Court of the First Circuit, State of Hawaii, Case No. 18-1-0540-04, which the Aminas removed to this Court on June 14, 2018.   *See* Civ. No. 18-00225 DKW-KSC, Dkt. No. 1 (Notice of Removal).

[4]The Court takes judicial notice of documents whose contents are incorporated by reference or attached to Plaintiffs' Complaint, including the Mortgage, Note, and documents recorded at the State of Hawaii Bureau of Conveyances.   *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012).   The Court also considers matters that are the proper subject of judicial notice pursuant to Federal Rule of Evidence 201, including publicly available documents and the Court's own records.   *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Barber v. Ohana Military Communities, LLC,* 2014 WL 3529766, *4 (D. Haw. July 15, 2014); *see also Bartolotti v. Maui Mem'l Med. Ctr.*, 2015 WL 4545818, at *3 (D. Haw. July 28, 2015) ("Matters of public record that may be judicially noticed include records and reports of administrative bodies, and documents filed with courts, 'both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'") (quoting *United States v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992)) (some citations omitted).

## A.   <u>The First Lawsuit</u>

In the First Lawsuit, the Aminas alleged claims against Defendants WMC Mortgage LLC, General Electric Company ("GE"), MERS, Chase Home Finance LLC and Chase Home Finance, Inc., and LCS Financial Services Corporation for seeking to quiet title and for violations of TILA, RESPA, the FDCPA, the Fair Credit Reporting Act ("FCRA"), and state law.   The Aminas' claims arose from a mortgage transaction backing two loans from WMC—one for $880,000, and another for $220,000—and a threatened foreclosure of the Property located at 2304 Metcalf Street # 2, Honolulu, Hawaii 96822.   *See Amina,* 2011 WL 1869835, at *1 (D. Haw. May 16, 2011).   The district court, in the Second Lawsuit, summarized the proceedings in the First Lawsuit as follows:

> The court addressed two rounds of dispositive motions, including (1) granting WMC and GE's Motion for Judgment on the Pleadings and granting LCS's Motion for Summary Judgment, 2011 WL 1869835 (D. Haw. May 16, 2011); and (2) granting WMC and GE's Motion to Dismiss Second Amended Complaint, 2011 WL 3841001 (D. Haw. Aug. 26, 2011).
>
> After this motions practice, several of Plaintiffs' claims in their May 31, 2011 Second Amended Complaint still stood, including a claim for quiet title against MERS entities, Chase entities, and "Unknown Owners."   Civ. No. 1000165 JMS-KSC, Doc. No. 87, SAC Count II.   This claim asserted that MERS entities and Chase entities have all falsely claimed a right to the subject property, and that Plaintiffs are entitled to ownership of the subject property without interference by Defendants.   *Id.* ¶¶ 150, 152–55.

&ast;&ast;&ast;&ast;

> In the meantime, motions for summary judgment were filed by the remaining Defendants. Doc. Nos. 118, 121. While these Motions were pending, Plaintiffs stopped participating in this action, resulting in its dismissal with prejudice. *See* 2012 WL 612463, at *3 (D. Haw. Feb. 24, 2012). This dismissal was affirmed on appeal, and the mandate issued on June 16, 2014. Doc. No. 175.

2015 WL 84760, at *3 (D. Haw. Jan. 7, 2015), *aff'd*, 694 F. App'x 492 (9th Cir. 2017). The Ninth Circuit affirmed the district court's dismissal with prejudice of the First Lawsuit. 554 F. App'x 555 (9th Cir. 2014).

### B.    The Second Lawsuit

In the Second Lawsuit, the Aminas filed their original complaint against Bank of New York Mellon ("BONY") on November 28, 2011, their First Amended Complaint on June 5, 2012, and their Second Amended Complaint adding U.S. Bank N.A. as a defendant on October 19, 2012.[5] After motions practice, the issue on summary judgment in the Second Lawsuit was narrowed to "whether Plaintiffs entered into the mortgage loan at issue," and its validity. 2015 WL 84760, at *4 (D. Haw. Jan. 7, 2015). The district court's order granting defendants' motion for summary judgment found both that the Mortgage was validly transferred to U.S.

---

[5]The Aminas named defendant U.S. Bank N.A., as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-Through Certificates, Series 2006-WMC2, Defendants-Appellees, the same Trust named in the instant civil action.

Bank and also that the Aminas were not entitled to quiet title. The district court

explained the Mortgage transactions at issue in the litigation:

> Throughout the pendency of both the First Action and this action, there was no dispute that Plaintiff entered into two mortgage loans on the subject property with WMC in 2006. (The mortgage loan for $220,000 has been released, leaving the one for $880,000 at issue.) Indeed, the Complaint in the First Action (which included WMC as a Defendant) recited that Plaintiffs entered into these two mortgage loans with WMC, and asserted claims based upon alleged improprieties by WMC and WMC's loan documents. *See* Civ. No. 10–00165 JMS–KSC, Doc. No. 1, Compl. ¶¶ 38–81. And in this action, the parties have focused not on whether Plaintiffs ever entered into mortgage loans on the subject property, but rather whether these mortgage loans were transferred to U.S. Bank. *See, e.g.*, 2012 WL 3283513, at *5 (explaining that Plaintiffs assert "that Defendant is not a mortgagee and that there is no record evidence of any assignment of the mortgage loan to Defendant"); 2013 WL 1385377, at *3 (same).

2015 WL 84760, at *4. Turning to the merits of the claims, the district court

determined that "U.S. Bank is the mortgagee on the mortgage loan on the subject

property," based upon the following evidence in the summary judgment record:

> Defendants have presented evidence that in June 2006, Plaintiffs' mortgage loan was transferred to JP Morgan Trust pursuant to the PSA, as is shown in the Mortgage Loan Schedule for the JP Morgan Trust listing Plaintiffs' mortgage loan. *See* Doc. No. 141–1, Alegria Decl. ¶¶ 5–6; Doc. No. 142–2, Defs.' Ex. D (PSA); Doc. No. 158, Defs.' Ex. E at 1, 43 (loan schedule). Plaintiffs' $880,000 mortgage loan is identified in the Loan Schedule by the Loan ID number ****1019, which also appears on the upper left-hand corner of the note and mortgage. Doc. No. 141–1, Alegria Decl. ¶ 6; *see also* Doc. No. 158, Defs.' Ex. E at 1, 43; Doc. No. 142–1, Defs.' Ex. C (Balloon Note for

$880,000); Doc. No. 141–5, Defs.' Ex. B (mortgage on subject property referring to Balloon Note for $880,000). Further, on April 4, 2012, an assignment of mortgage from MERS, as nominee for WMC, its successors, and assigns, to U.S. Bank (again, as trustee for the JP Morgan Trust), was recorded in the Hawaii Bureau of Conveyances. *See* Doc. No. 142–4, Defs.' Ex. F. Finally, Defendants present a copy of the Note, endorsed in blank, and Alegria asserts that JP Morgan Chase has possession of it. Doc. No. 141–1, Alegria Decl. ¶ 4; Doc. No. 142–1, Defs.' Ex. C. This evidence supports the conclusion that U.S. Bank is the mortgagee on the mortgage loan on the subject property.

2015 WL 84760, at *6. The court rejected the Aminas' challenge to the validity of the transfer based upon the various assignments of the Mortgage and the Pooling and Servicing Agreement, holding:

it is well-established that a borrower, who is a third party to the PSA and assignment, lacks standing to challenge their validity. . . . Plaintiffs are not parties to either of them, and therefore do not have standing to challenge them. *See also Abubo v. New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (rejecting argument that assignment is invalid on two bases "(1) because a third party lacks standing to raise a violation of a PSA, or (2) because noncompliance with terms of a PSA is irrelevant to the validity of the assignment (or both)"); *Nottage v. Bank of New York Mellon*, 2012 WL 5305506, at *5 (D. Haw. Oct. 25, 2012) (same); *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 3202180, at *5 (D. Haw. Aug. 3, 2012) (same).

2015 WL 84760, at *8–9. Upon granting defendants' motion for summary judgment, the court entered judgment and closed the case. The Ninth Circuit affirmed the district court's rulings on the motions to dismiss and for summary judgment. 694 F. App'x 492, 494 (9th Cir. 2017).

## II.    Plaintiffs' Current Action

On March 15, 2018, the Aminas initiated this civil action against the Chase

Defendants, MERS, and WMC, attacking the same Mortgage as the prior lawsuits:

"On 3/6/2006, [the] Mortgage was recorded with the State of Hawaii Bureau of

Conveyances as Document No. 2006-042511.   Plaintiffs never applied for the loan

described in the Note which was filed as Document No. 142-1 and as Document

144-4 in Case No. 1:11-cv-00714 JMS-BMK."   Compl. ¶¶ 225–226.   They again

challenge the Assignment of Mortgage:

> 244.   Taking the Alegria Declaration to be true, after June, 2006, and specifically on 3/22/2012, the Loan no longer belonged to any successor or assign of WMC Mortgage Corp.
>
> 245.   Therefore, the ASSIGNMENT OF MORTGAGE is invalid and void for lack of authority.   You can't sell something you don't own.
>
> 246.   The Assignment was created and recorded during litigation – specifically, Case No. 11-00714 JMS-BMK in the USDC Hawaii, which was filed on 11/28/2011.

Compl. ¶¶ 244–246.

The Aminas allege eight causes of action in their 479-paragraph Complaint,

each directed at voiding their loan on the Property or invalidating Defendants' rights

under the Mortgage and Note.   The Complaint also seeks to distinguish this case

from the prior litigation, despite referring extensively to the facts and documents underlying the First and Second Lawsuits:

1.    New facts exist since the date of filing of the most recent lawsuit. . . .

2.    This lawsuit is against different parties than the most recent lawsuit.

3.    None of the Defendants is the (or a) mortgagee [sic].

      ****

7.    The Mortgage recorded as Document No. 2006-042511 and the Note which was filed as Document No. 142-1 (and also as Document 144-4) in Case No. 1:11-cv-00714 JMS-BMK will be collectively referred to as "the disputed loan" or "the loan in dispute."

8.    Plaintiffs are interested in the Pooling and Servicing Agreement (PSA), not because of any attempt to "challenge" it or to hold parties to account for breaking its terms, but for the purpose of identifying the true owner of the disputed loan.

9.    Plaintiffs seek declaratory judgment that none of the Defendants may foreclose, because only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property.

10.   Plaintiffs made payments to CHASE that were not credited to Plaintiffs' account and were not forwarded to the proper party.

11.   Unlike in most cases, Plaintiffs have standing to challenge the validity of the Assignment because, if the Assignment is not valid, then the proper party has fully been paid off, and Plaintiffs are not in default.

Compl. (footnote omitted).

Among other relief, the Complaint asks that the Court declare that "Plaintiffs have clear title to the property, free from any encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiffs' property." Compl. ¶ 475. Plaintiffs also seek to enjoin all Defendants from "selling, assigning or transferring mortgages or obligations relating to the [Property]; from instituting, prosecuting or maintaining nonjudicial or judicial foreclosure proceedings against the [Property]," Compl. ¶ 475, or "otherwise taking any steps to deprive Plaintiffs of ownership and/or enjoyment of their home." *Id.*

Chase Defendants and MERS seek dismissal of the Complaint based upon claim and issue preclusion principles or, alternatively, because the Aminas' claims are both time-barred and fail to state plausible claims for relief. NTC filed a substantive joinder asking that the Complaint be dismissed with prejudice.[6]

## STANDARD OF REVIEW

### I.    Motion To Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

---

[6] NTC is named in only two causes of action: for quiet title and declaratory judgment.

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1988). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

"A district court may consider the affirmative defenses of claim or issue preclusion on a Rule 12(b)(6) motion to dismiss." *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1231 n.5 (D. Or. 2013); *Thompson v. Cty. of Franklin*, 15 F.3d 245,

253 (2d Cir. 2004) (noting that *res judicata* challenges may be considered in a motion to dismiss for failure to state a claim under Rule 12(b)(6)); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (*res judicata* properly raised in motion to dismiss when there are no disputed issues of fact); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (*res judicata* may be sustained on a Rule 12(b)(6) motion when relevant facts are shown by court records); *see also Rainwater v. Banales*, 2008 WL 5233138, at *9 n.6 (C.D. Cal. 2008) (leave to amend may be denied as futile when the claims would be barred by *res judicata* or collateral estoppel).

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint, or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). As noted above, the Court takes judicial notice of the pleadings, court orders, and other public records attached to the parties' briefs. *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## II.  Plaintiffs' Pro Se Status

Because Plaintiffs are proceeding pro se, the Court liberally construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal

courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).   The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."   *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

A court may, however, deny leave to amend where further amendment would be futile.   *See, e.g., Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment"); *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (Leave to amend may be denied "where the amendment would be futile.").

## DISCUSSION

Defendants ask the Court to dismiss all causes of action with prejudice. Because the majority of Plaintiffs' current claims and the conduct forming the basis for those claims were addressed in the First and Second Lawsuits, the Court determines that the doctrines of claim and issue preclusion apply to bar nearly all of the Aminas' current claims for relief.   Moreover, because the Complaint fails to timely allege any plausible claim upon which relief can be granted, all time-barred

claims are dismissed *with prejudice*. Because amendment of a narrow set of claims *may* be possible, the Court grants the Aminas limited leave to amend only those claims that are not otherwise precluded or time-barred.

## I. Claims and Issues That Were Adjudicated in the First and Second Lawsuits Are Barred in the Present Action

For the reasons detailed below, the Court finds that, of Plaintiffs' current claims, the majority are barred by the doctrines of claim and issue preclusion. Only those claims or issues that could not have been previously litigated are excepted from the Court's ruling.

### A. Framework of Analysis

The preclusive effect of a federal court judgment is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under the doctrine of *res judicata*, also known as "claim preclusion," a final judgment on the merits forecloses successive litigation of the same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. *Id.* at 892 (quotation and citation omitted). Moreover, claim preclusion bars relitigation not only of all grounds of recovery that were actually asserted, but also those that could have been asserted. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003); *see also Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (*Res judicata* proscribes subsequent "lawsuits on 'any claims that were

raised or could have been raised' in a prior action.") (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). The relevant inquiry, then, is whether the claims asserted in the subsequent lawsuit were or could have been brought in the original lawsuit. *See, e.g.*, *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998) ("It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.").

Claim preclusion applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties. *Ruiz v. Snohomish Co. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (quotation and citation omitted).

> A court is to apply four criteria to decide whether there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). The fourth criterion is the most important. *Id.* at 1151.

*Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).[7]  "The party asserting a claim preclusion argument 'must carry the burden of establishing all necessary elements.'"  *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)) (additional citations omitted).

Unlike claim preclusion/*res judicata*, the doctrine of issue preclusion, or collateral estoppel, prevents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding, regardless of the claim to which they relate.  *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979) (quoting *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985)).  A party invoking issue preclusion must show that:

---

[7]As to the fourth and most important factor of the "identity of claims" test—whether the separate actions arise from the "same transactional nucleus of facts"—the Ninth Circuit has explained that—

> in most *res judicata* cases, the inquiry about the 'same transactional nucleus of facts' is the same inquiry as whether the claim could have been brought in the previous action.  If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action.  The plaintiff simply could have added a claim to the complaint.  If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action.  Either way, the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action.  In that context, it makes sense, when asking whether the claims involve the 'same transactional nucleus of facts,' to ask as a proxy whether the claims could have been brought in the original action.

*Liquidators of European Fed. Credit Bank*, 630 F.3d at 1151; *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003).

> (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992). Because the issue must have been "actually litigated," issue preclusion may not obtain where the parties have not had a full and fair opportunity to litigate the merits of the issue. *See Allen v. McCurry*, 449 U.S. 90, 94–95 (1980).

## B.  Claims Barred by *Res Judicata*

All claims challenging the Assignment of Mortgage are barred by the Second Lawsuit, which already expressly rejected the same attack. Moreover, Plaintiffs' statutory and regulatory claims previously raised in the First Lawsuit are likewise barred. As discussed below, claim preclusion is applicable because there is: (1) an identity of claims; (2) a final judgment on the merits from a previous lawsuit; and (3) privity between the previous defendants and the Defendants in this case. Only unrelated claims that were not and could not have been raised in the prior litigation are excluded from this bar. Claims arising from separate, unrelated violations, or which could not have been raised in the prior litigation are not precluded based upon the current record before the Court.

1. **<u>Identity of Claims</u>**

Each of the relevant factors weighs in favor of a finding that this case and the two prior cases, in large part, involve the same claims, with minimal exceptions. Certain claims in the current action are clearly identical to prior claims and are based on the same factual predicates. Several newly labeled or reformulated claims have simply repackaged the Aminas' prior attack on the validity of the Assignment.[8] The Court briefly addresses each cause of action in the current Complaint, identifying any portions thereof that are not precluded by the First and Second Lawsuits, in order to provide clarity to Plaintiffs in the filing of any amended complaint.

Plaintiffs' first cause of action to quiet title to the Property was raised before and adjudicated by the district court in the Second Lawsuit. Plaintiffs' current claim asserts that there "are no valid mortgages on the property," Compl. ¶ 391, because of the false and invalid Assignment of Mortgage, *id.* ¶¶ 27–59, and seeks to

---

[8]Claims need not be identical or have the same legal label in order for res judicata to apply. *See, e.g., Hart v. Bank of Am. Home Loans*, 2012 WL 12887911, at *3 (C.D. Cal. June 25, 2012), *aff'd* 582 F. App'x 698 (9th Cir. 2014) ("Thus, all current claims arise from the same transactional nucleus of facts as [the prior cases] because they directly relate to the Loan and the same conduct on the part of the same defendants—namely, conduct in furtherance of the origination, transfer, servicing, modification, and foreclosure of the Loan."); *In re Greenstein*, 576 B.R. 139, 173 (Bankr. C.D. Cal. 2017) ("Although the First Amended Complaint provides additional factual detail, mentions some additional legal theories, and specifically names some additional agents and attorneys (*i.e.*, privies of Wells Fargo), both complaints deal with the same primary rights. Both complaints contend that Wells Fargo and its personnel conspired by various wrongful acts to deprive Greenstein of her home and the equity value she allegedly held in it.").

quiet title "against parties which . . . are not owner and holder of any Note," *id.* ¶ 48.

The district court found that the Aminas did, in fact, "enter[] into the mortgage loans

on the subject property with WMC," 2015 WL 84760, at *6, and that the April 4,

2012 Assignment was valid, *id.* at *8.[9]

In response, the Aminas argue that their present quiet title claim, and any

claim based upon the allegedly invalid Assignment, cannot be the "same" as their

earlier claims because they could not have raised the current claims in the earlier

litigation.   Plaintiffs are mistaken.   Not only *could* they have raised the current

claim—they did.   In the Second Lawsuit, the Aminas filed their original complaint

---

[9]The district court explains and rejects the Aminas' erroneous arguments challenging the
Assignment in the following passage:

> Plaintiffs raise, in rapid-fire succession and with no legal or factual support, a slew
> of arguments challenging the validity of the assignment to U.S. Bank.   These
> arguments include that the assignment is invalid because (1) the assignment was
> signed on behalf of JP Morgan by individuals who are robosigners without actual
> authority and who have signed other assignments on behalf of other companies;
> (2) MERS lacked authority to assign the mortgage on behalf of WMC to the PSA
> where MERS is not in good standing in Hawaii and never adopted policies
> certifying officers, WMC was never registered to do business in Hawaii, WMC did
> not exist as of the date of assignment, WMC is not a member of MERS, and the
> nominee/agency relationship between MERS and WMC does not include the right
> of assignment; (3) the March 22, 2012 assignment violated the PSA, whose closing
> date was June 28, 2006; (4) no "good and valuable consideration" was given as
> recited in the assignment, the note was not delivered to U.S. Bank, and the signing
> was not witnessed by a notary.   Doc. No. 155, Pls.' Opp'n at 7–8.   The court
> rejects these arguments.

2015 WL 84760, at *8.   The district court unambiguously ruled: "The court therefore rejects that
Plaintiffs may raise a genuine issue of material fact [with respect to their quiet title claim] by
challenging the validity of the assignment of the mortgage loan."   2015 WL 84760, at *9.

on November 28, 2011, their First Amended Complaint on June 5, 2012, and their

Second Amended Complaint against U.S. Bank on October 19, 2012. The Aminas'

argument that they could not have brought their claims based upon the April 4, 2012

Assignment in the Second Lawsuit is factually and legally without merit.[10] *See*

Mem. in Opp'n at 2–3, Dkt. No. 28. More important still, the Second Amended

Complaint filed over six months after the Assignment did, in fact, challenge the

Assignment. *See* Chase Mem. in Supp., Ex. C ¶¶ 6–7, 13, 34–40 (10/19/12 SAC);

Dkt. No. 14-5. The current quiet title claim unquestionably arises out of the same

transaction as the claims previously adjudicated in the Second Lawsuit against these

Defendants.

Plaintiffs' second cause of action for violation of the FDCPA, 15 U.S.C.

§ 1692 *et seq*., alleges that the Chase Defendants failed to respond to a November 7,

2017 written "request for verification and validation," Compl. ¶ 400, and did not

---

[10]Of particular relevance here, the Ninth Circuit recently "confirm[ed] that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the *operative* complaint." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (emphasis added) (agreeing "that a bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed is appropriate"). The operative complaint in the Second Lawsuit was the Second Amended Complaint, which superseded the prior complaint and rendered it a nullity. *See, e.g.*, *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("Plaintiff's Second Amended Complaint superseded the First Amended Complaint, and the First Amended Complaint ceased to exist."). The Aminas' argument to the contrary does not withstand scrutiny. *See* Compl. ¶¶ 303–304 ("The state of facts considered in a lawsuit is the state of facts that existed as of the date of the filing of the initial complaint. Therefore, all consideration of the ASSIGNMENT OF MORTGAGE in the [Second Lawsuit] was unlawful and void, and has no 'res judicata' effect.").

"validate the alleged debt within 30 days," *id.* ¶ 402. Although the Aminas allege

that they sent a new letter under the FDCPA to the Chase Defendants on November

7, 2017, the district court, in the First Lawsuit, dismissed their prior FDCPA claim

against Chase.[11] It appears to the Court that the Aminas have simply sent additional

written requests to Chase, seeking the same relief under the FDCPA, and thereafter

alleged a violation of the FDCPA purportedly triggered by the successive written

requests. Insofar as Plaintiffs raise the FDCPA anew, predicated on the same

underlying debt verification correspondence—and on the very same Mortgage

account, to the same servicer—those claims arise out of the same underlying

transactional nucleus of facts. To the extent the FDCPA claim in the present matter

arises from a separate violation of the FDCPA, untethered to the prior claim and

which could not have been alleged in the earlier litigation, it is not entirely barred.

Accordingly, the Court does not find, for present purposes, that this FDCPA claim is

wholly precluded.

Similarly, Plaintiffs' third cause of action against the Chase Defendants for

violation of RESPA, 12 U.S.C. § 2601 *et seq.*, relies upon a November 7, 2017

---

[11]In the First Lawsuit, the district court addressed Plaintiffs' FDCPA claims against Chase and other parties, based upon Plaintiffs' written requests for verification in 2010. *See* 2011 WL 1869835, at *12 (D. Haw. May 16, 2011) ("Plaintiffs claims against Chase entities for violations of 15 U.S.C. §§ 1692g(a)(2)-(5) and 1692g(b) remain. Plaintiffs' claims for violation of 15 U.S.C. §§ 1692e and 1692f against LCS and Chase entities are dismissed with leave to amend."). These claims were ultimately dismissed with prejudice based upon the Aminas' failure to prosecute.

qualified written request ("QWR") seeking documents and details regarding their account. Compl. ¶¶ 407–409. A similar RESPA claim was dismissed in the First Lawsuit, based upon prior QWRs sent to Chase and WMC. *See* 2011 WL 3841001, at *6; 2012 WL 612463 (dismissed with prejudice). To the extent the current RESPA claim arises from a separate, unrelated violation of the statute and which could not have been alleged in the earlier litigation, it is likely not barred. Accordingly, the Court does not find, for present purposes, that the RESPA claim is completely precluded.

In their fifth cause of action, Plaintiffs allege a UDAP violation based upon two separate acts alleged to be unfair and deceptive: (1) the "recording of the forged Assignment of Mortgage," Compl. ¶ 424, and (2) the "mailing of important letters under the pseudonym 'CHASE,'" *id.* ¶ 425. The first alleged act arises out of the same series of transactional facts previously addressed in the Second Lawsuit regarding the validity of the Assignment. The second series of acts relating to mailings from Chase appear to refer to an October 16, 2017 statement received from "Chase," Compl. ¶ 352, which Plaintiffs allege misstated "the amounts and also misrepresented who was entitled to enforce a promissory note." Compl. ¶ 352. In response to Plaintiffs' November 7, 2017 letter, "Chase" sent, on November 20, 2017, a letter indicating the request was pending, and then "Chase" mailed another letter on December 11, 2017, stating it needed more time to respond to the request.

Compl. ¶¶ 355–357.   To the extent this series of correspondence in 2017 serves as the basis for their UDAP claim, it is not precluded by the prior litigation.   However, as addressed below, it fails to state a claim for violation of HRS § 480-2.

The TILA violation alleged in the seventh cause of action is based upon the failure of the Chase Defendants to notify Plaintiffs, within 30 days of the transfer, that "after May 20, 2009, someone sold or otherwise transferred or assigned to all Chase Defendants," the Mortgage on the Property.   Compl. ¶¶ 447, 452.   In the First Lawsuit, the district court dismissed Plaintiffs' TILA claims for rescission and damages.   2011 WL 3841001, at *5; 2011 WL 1869835, at *6.   Insofar as the present claim is not related to the prior TILA claims involving loan origination and servicing disclosures, it is not precluded by the earlier lawsuits.   However, as addressed below, the claim is time-barred as a matter of law.

Finally, although they seek remedies and do not amount to stand-alone claims, the Aminas' fourth cause of action for an accounting, sixth cause of action seeking relief from judgment under Rule 60, and eighth cause of action for declaratory relief either raise the same claims as earlier litigation, or simply seek to collaterally attack the results of prior litigation.   Because they arise out of the same set of events, or could have been brought in the prior cases, these causes of action satisfy the identity of claims factor.

In sum, the Aminas' claims (with the noted exceptions) are based largely on the same transactional nucleus of facts, and there is no reason they could not have been raised in the First or Second Lawsuits. Indeed, in some cases, they were. Consequently, Defendants have satisfied the identity of claims element of *res judicata* with respect to the Aminas' claims—regardless of their label—challenging the Assignment or validity of the Mortgage, including the quiet title claim. Insofar as the Complaint asserts new causes of action that are not based upon the same transactional nucleus of facts as those raised in the First and Second Lawsuits—including those claims or portions of claims based upon communications in late 2017—Defendants have not satisfied this element, and those claims are not precluded by the prior litigation.

## 2. <u>Final Judgment on the Merits</u>

The First Lawsuit terminated in a final judgment against the Aminas due to their failure to prosecute and comply with court orders. That dismissal with prejudice was affirmed by the Ninth Circuit. The dismissal of all claims in the First Lawsuit constitutes an adjudication on the merits of those claims. *See Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 714 (9th Cir. 2001) (holding that dismissal of prior action with prejudice based upon plaintiffs' failure to prosecute operates as an adjudication upon the merits under Fed. R. Civ. P. 41(b), and, therefore, the involuntary dismissal acts "as a judgment on the merits for the

purposes of *res judicata*") (quoting *United States v. Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997)); *see also Johnson v. United States Dep't of Treasury*, 939 F.2d 820, 825 (9th Cir. 1991) (noting that dismissal for failure to prosecute is "treated as an adjudication on the 'merits' for purposes of preclusion"); *Rosales v. Mortgage Store Financial Inc.*, 2010 WL 2674105, at *3 (S.D. Cal. July 2, 2010) (applying *res judicata* to bar a plaintiff's claims where a prior action was dismissed with prejudice based on non-opposition); *see generally Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'").

The Second Lawsuit also resulted in a final judgment on the merits on Plaintiffs' quiet title claim, upon the district court's grant of summary judgment in defendants' favor. This holding constituted a resolution on the merits which became final when the district court entered judgment. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006) ("[I]n federal courts, a district court judgment is 'final' for purposes of *res judicata*.") (citation and quotation marks omitted). It was then affirmed on appeal.

### 3. <u>Identity or Privity of Parties</u>

Finally, there is privity between the relevant defendants named in the First and Second Lawsuits and the parties in interest in the current action. Several of the

identical parties, or their successors, are named in the current case.[12]   Where the

parties in two lawsuits are not identical, privity may exist if there is "substantial

identity" between parties, or "when there is sufficient commonality of interest"

between them.   *See Tahoe–Sierra Pres. Council, Inc.*, 322 F.3d at 1081.   Here, the

parties all share a substantial commonality of interests related to enforcement of the

Mortgage in question.   *See Janeece Fields v. Bank of New York Mellon*, 2017 WL

1549464, at *3 (N.D. Cal. May 1, 2017) (holding that successor servicer and trustee

had privity to lender who was party in previous suit); *Amedee v. Citimortgage, Inc.,*

2016 WL 1070657, at *5 (N.D. Cal. Mar. 18, 2016) (holding that loan servicing

agent had privity with beneficiary of the loan who appointed it); *Sepehry–Fard v.*

*Select Portfolio Servicing, Inc.,* 2015 WL 1063070, at *5 (N.D. Cal. Mar. 10, 2015);

*Apostol v. CitiMortgage, Inc.,* 2013 WL 6328256, at *5 (N.D. Cal. Nov. 21, 2013)

(finding privity where MERS was not a party to the prior suit, but "its interests are

also aligned with CitiMortgage sufficiently to establish privity" due to its role in the

allegedly invalid assignment and securitization of the mortgage).   Although it

---

[12]The named defendants in the First Lawsuit were: WMC Mortgage Corp.; MERSCORP, Inc.;
MERS; Chase Home Finance, LLC; Chase Home Finance, Inc.; General Electric Company; LCS
Financial Services Corporation; and Unknown Owners of the Evidence of the Debt and/or owners
of the note.   The Complaint in the instant matter includes Chase Home Finance, LLC as a named
defendant, described as "JPMorgan Chase Bank, N.A. successor by merger to Chase Home
Finance, LLC."   Compl. ¶¶ 118 –119.   The additional Chase Defendants maintain privity with
these defendants based upon existing parent-subsidiary relationships.   *See* Mem. in Supp. at 18–
19 (citing Corporate Disclosure Statements).

appears that NTC was not named in the prior lawsuits, as discussed below, the only claim against it—for quiet title—is barred by the doctrine of issue preclusion.

In sum, Plaintiffs' claim for quiet title—and all claims touching upon the validity of the Mortgage or Assignment—are precluded and dismissed *with prejudice*. Claims that could not have been brought in the earlier litigation, including FDCPA, RESPA, UDAP, or TILA violations based upon communications between Plaintiffs and the Chase Defendants in late 2017 are not categorically precluded based upon the current record before the Court.[13] However, those claims are nonetheless deficient for the reasons detailed below.

The Court next examines claims and parties that are not barred by application of *res judicata*, but which are nonetheless barred by the related doctrine of issue preclusion.

### C.    Claims and Issues Barred by Issue Preclusion

Plaintiffs appear to allege that NTC played some role in preparing the Assignment, which Plaintiffs equate to NTC asserting an interest in the Property. Plaintiffs allege quiet title and declaratory relief claims against NTC. As discussed below, relitigation of issues regarding the validity of the Assignment is barred by the doctrine of issue preclusion. *Clark*, 966 F.2d at 1321 (issue preclusion applies

---

[13]Defendants, the parties asserting a claim preclusion argument, have failed to "carry the burden of establishing all necessary elements" with respect to these portions of particular claims at this time. *Garity*, 828 F.3d at 855.

when the (1) identical issue (2) was actually litigated and (3) was necessary to a prior judgment); *Spinney v. Greenwich Capital Fin. Prods., Inc*., 2006 WL 1207400, at *8 (D. Haw. May 3, 2006) ("[Defensive issue preclusion] only prevents a party from relitigating an issue which was actually raised, litigated and decided in the prior action") (citation omitted).

In the Second Lawsuit, the district court determined that U.S. Bank, as trustee, possessed a valid interest in the Property via a valid Assignment. Plaintiffs unsuccessfully challenged that determination through briefing, argument, and evidence before the court's entry of summary judgment. Plaintiffs, in other words, actually litigated the validity of the Assignment in the Second Lawsuit. *See Janjua v. Neufeld*, 2017 WL 2876116, at *10 (N.D. Cal. July 6, 2017) (actually litigated means that the issue was "contested by the parties and submitted for determination by the court") (quotation omitted). The district court's determination was necessary and critical to the resolution of the Second Lawsuit and resulted in summary judgment on Plaintiffs' quiet title claim. Therefore, any challenge to the validity of the Assignment as to NTC, and any related claim for quiet title, is precluded. The claims against NTC are barred by issue preclusion and dismissed with prejudice.

## II.     The Complaint Fails To State A Claim

As discussed more fully below, even liberally construed, the allegations in the Complaint are deficient for several reasons.   First, Plaintiffs' TILA claims are time-barred as a matter of law.[14]   Second, even if timely, the Complaint fails to plausibly allege claims for violation of the cited provisions.   Third, the voluminous Complaint fails to comply with Rule 8.[15]   Defendants' Motions are therefore granted, and the time-barred claims are dismissed with prejudice.   The Aminas are granted limited leave to amend consistent with the instructions below.

### A.     Plaintiffs Fail to State a Quiet Title Claim

Plaintiffs' quiet title claim based upon the allegedly defective Assignment and/or transfers of security interests in the Property are precluded by Plaintiffs' prior lawsuits, for the reasons stated above.   To the extent their quiet title claim has any other factual or legal basis, it fails to state a claim for relief.   Even if liberally construed, the Aminas have not alleged the most basic facts regarding the interests

---

[14]"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss."   *Seven Arts Filmed Entm't Ltd. v. Content Media Corp*., 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp*., 623 F.2d 117, 119 (9th Cir. 1980)); *see also Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.") (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128–29 (9th Cir. 1999)).

[15]The conclusory statements in the 97-page Complaint (inclusive of exhibits), fail to comply with the pleading requirements of Rule 8.   A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a).   *See Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 640 (9th Cir. 1988); *see also McHenry v. Renne*, 84 F.3d 1172, 1172 (9th Cir. 1996).

of various parties to make out a cognizable quiet title claim—they simply deny that any party has a valid interest in the Property.[16]  *See* Compl. ¶ 394 ("Defendants' claims to any right, title, or interest in the property are false and without merit"). These bare legal conclusions, which are nevertheless contradicted by the record and prior case law, fail to state a plausible claim for relief.   For these additional reasons, Plaintiffs fail to state a claim for quiet title, and the cause of action is dismissed.

### B.      Plaintiffs Fail to State a Claim for Violation of the FDCPA

The second cause of action alleges that the Chase Defendants violated the FDCPA, 15 U.S.C. § 1692 *et seq.*, when they did not respond within 30 days to Plaintiffs' November 7, 2017 letter requesting verification and validation of the debt.   Compl. ¶ 398–403.   Although Plaintiffs do not allege which particular provision of the FDCPA the Chase Defendants allegedly violated, under Section 1692g(b), if a consumer exercises his or her rights by disputing the debt in writing or sending a written request under Section 1692g(a)(4) or (5), the debt collector must "cease collection of the debt" until it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor" and mails this

---

[16]Hawaii law provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."   HRS § 669-1(a).

information to the consumer.   15 U.S.C. § 1692g(b); *Hernandez v. Williams,*

*Zinman & Parham PC*, 829 F.3d 1068, 1080 (9th Cir. 2016).

"There are four elements to an FDCPA cause of action: (1) the plaintiff is a

'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction

entered into for personal purposes; (3) the defendant is a 'debt collector' under 15

U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in

15 U.S.C. §§ 1692a-1692o."   *Wheeler v. Premiere Credit of North America, LLC*,

80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362 F.3d 1219,

1226-27 (9th Cir. 2004)).

Plaintiffs have not alleged facts satisfying each of these elements to

demonstrate a plausible claim under the FDCPA.   Even assuming that Plaintiffs are

consumers who entered the challenged transactions for personal purposes, and that

one or more Defendants is a "debt collector," Plaintiffs have failed to allege facts

supporting their legal conclusions, and, in fact, their allegations appear to contradict

their claims.   Close examination of the Complaint reveals no plausible allegations

that the Chase Defendants failed to fulfill their obligations under the FDCPA

following receipt of Plaintiffs' unsupported and misleading letter purporting to

challenge the existence of their debt, or that Plaintiffs' letter was timely under

Section 1692g(b).[17]   For example, Plaintiffs assert that one or more Chase entities

responded to Plaintiffs' November 7 written request on November 20 and December

11, 2017, Compl. ¶¶ 355–356, which contradicts Plaintiffs' later allegation that

"Chase Defendants had a duty to respond to the letter within 30 days, [however,]

[a]ll Chase Defendants failed to make any attempt to validate the alleged debt."

Compl. ¶¶ 401, 403.   Plaintiffs allege no plausible facts to support liability under

the FDCPA based upon the 2017 correspondence, and even if they did, their debt

would not be "invalidated" in light of their contrary allegations and the record before

the Court.[18]

Plaintiffs' FDCPA claim is therefore dismissed.   Because amendment of this

claim may be possible, dismissal is without prejudice.

---

[17]Section 1692g(b) requires that "the consumer notif[y] the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor[.]"   Plaintiffs offer no facts in support of this requirement.   *Cf. Virgen v. Mae*, 2007 WL 1521553, at *9 (E.D. Cal. May 23, 2007) ("[P]laintiff's allegations include admissions that she received written notice of the amount of debt asserted by defendant General Revenue Corporation and did not dispute the validity of the debt in writing within thirty days.   Plaintiff's first amended complaint therefore fails to state a claim under 15 U.S.C. § 1692g(a)(3) or 15 U.S.C. § 1692g(b).").

[18]As the district court previously explained in the First Lawsuit, "'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'"   *Amina v. WMC Mortg. Corp.*, No. CIV. 10-00165 JMS, 2011 WL 1869835, at *14 (D. Haw. May 16, 2011) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174–75 (9th Cir. 2006)).   There are no allegations that this information was withheld or not provided during the course of the prior litigation.   In fact, the record appears to indicate that Plaintiffs were already in possession of all of the information requested—they simply dispute it.

## C.     Plaintiffs Fail to State a Claim Under RESPA

The third cause of action alleges that the Chase Defendants failed to respond to Plaintiffs' November 7, 2017 QWR as required by 12 U.S.C. § 2601 *et seq*.

First, to the extent this claim invokes RESPA as the statutory basis for the alleged violation, it fails to a state plausible claim. Any RESPA claim is insufficiently pled because it is not clear which provision of the statute was violated by which party, nor do the allegations actually pled support a plausible cause of action.[19] To the extent the Aminas attempt to assert a claim for violation of 12 U.S.C. § 2605(e), their allegations are deficient.[20] They do not sufficiently allege

---

[19]In general, only three sections of RESPA create a private right of action: (1) 12 U.S.C. § 2605 requiring disclosure to a loan applicant of whether the servicing of the loan may be assigned, sold or transferred; notice to the borrower at the time of transfer; and responses by the loan servicer to qualified written requests by the borrower; (2) 12 U.S.C. § 2607 prohibiting kickbacks for real estate settlement services; and (3) 12 U.S.C. § 2608 prohibiting sellers from requiring buyers to use a specific title insurer as a condition of its sale.

[20]RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days[.]" 12 U.S.C. § 2605(e)(1)(A). As noted above, the Chase Defendants allegedly complied with this requirement on November 20. Compl. ¶ 355. After receiving the QWR, within 30 days, the loan servicer must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2). Under Section 2605(e)(4), the "30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." The allegations in the Complaint indicate that the Chase Defendants complied with Section 2605(e)(4) before the end of the 30-day period as well. Compl. ¶ 356.

the requisite elements of a claim, including facts supporting their actual damages.[21]
The Aminas acknowledge on the face of their RESPA claim, "Plaintiffs need
discovery to discern problems with the account."  Compl. ¶ 412.  Accordingly, the
Complaint fails to state a cognizable RESPA claim under Section 2605 and is
therefore dismissed.  *See Rey v. Countrywide Home Loans, Inc*., 2012 WL 253137,
at *6 (D. Haw. Jan. 26, 2012).

    To the extent Plaintiffs' RESPA claim is not otherwise time-barred or
precluded by the prior lawsuits, amendment of this cause of action *may* be possible.

### D.  **Plaintiffs Fail to State an Independent Claim for Accounting**

    Plaintiffs fail to state an independent claim for relief in their fourth cause of
action for an accounting, targeting the Chase Defendants who acted as servicers of
their debt.  Compl. ¶ 416.  This claim "request[s] an Order compelling the Chase
Entities to provide an accounting of all funds received from Plaintiff[s], and all

---

[21]In order to state a claim under RESPA, a plaintiff must allege facts showing that a specific
defendant violated a RESPA provision and that plaintiff suffered "actual damages . . . as a result"
of that defendant's failure to comply with that provision.   12 U.S.C. § 2605(f); *see Obeng
Amponsah v. Chase Home Fin., LLC*, 2015 WL 4940462, at *1 (9th Cir. Aug. 20, 2015) (affirming
dismissal of RESPA claim where the plaintiff's "allegations do not connect the alleged failure to
respond to his qualified written requests with any actual damages"); *see also Petrovich v. Ocwen
Loan Servicing, LLC*, 2015 WL 3561821, at * 2 (N.D. Cal. June 8, 2015) ("To state a claim under
RESPA, a plaintiff must allege that (1) a defendant violated RESPA; and (2) that defendant's
violation caused the plaintiff monetary damages."); *Menashe v. Bank of New York*, 850 F. Supp. 2d
1120, 1134 (D. Haw. 2012) ("Because damages are a necessary element of a RESPA claim, failure
to plead damages is fatal to a RESPA claim."); *Rymal v. Bank of Am*., 2011 WL 6100979, at *5 (D.
Haw. Dec. 6, 2011) (dismissing RESPA claim because "Plaintiff's assertion that she had difficulty
locating the real party in interest to mitigate losses or discuss 'work out options' d[id] not
adequately constitute actual damages").

funds related to Plaintiffs' account(s)."   Compl. ¶ 450.   This request seeks a

remedy, but cites no authority for any independent cause of action for an accounting.

*See, e.g.*, *Kennedy Funding, Inc. v. Chapman*, 2010 WL 2528729, at *11 (N.D. Cal.

June 18, 2010) (dismissing cause of action, while noting that claims for accounting

"are more appropriately characterized as forms of relief than independent claims");

*Borrego v. BMG U.S. Latin*, 92 Fed. App'x 572, 573 (9th Cir. 2004) (noting that

accounting is not an independent claim under state law) (citing *Hillman v. Stults*,

263 Cal.App.2d 848, 876, 70 Cal.Rptr. 295 (1968)); *Gaitan v. Mortg. Elec.*

*Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) (holding that

the "proposed SAC fails to state an independent claim for accounting, and

amendment is futile").

The Aminas' fourth cause of action is therefore dismissed.   Insofar as

Plaintiffs seek accounting as an equitable remedy, if warranted, they may seek this

relief in connection with an appropriate claim in an amended pleading.

### E.    **Plaintiffs Fail to State a Plausible, Timely UDAP Claim**

Plaintiffs' fifth cause of action, seeking relief under HRS Chapter 480, alleges

that the "Chase Defendants used unfair and deceptive actions in their relationship

with Plaintiffs."   Compl. ¶ 423.   The identified unfair and deceptive acts are:

(1) "recording of the forged Assignment," and (2) the mailing of important letters,

sent under the pseudonym "Chase." Compl. ¶¶ 424–425. Plaintiffs' UDAP claim is deficient for several reasons.

First, their UDAP claim for violation of HRS Chapter 480 is subject to a four-year limitations period. *See* HRS § 480-24 ("any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues"). To the extent this cause of action relies upon the "forged Assignment," the claim accrued no later than the recording date of the Assignment—April 4, 2012—and the four-year statute of limitations has run, unless Plaintiffs can allege facts sufficient to toll the statute of limitations. *See, e.g., Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d 1224, 1230–31 (D. Haw. 2011) (finding that claims brought pursuant to Chapter 480 may rely on the fraudulent concealment doctrine to toll the statute of limitations). The Complaint, however, includes no plausible allegations suggesting that equitable tolling may apply to the UDAP claim based upon fraudulent concealment. As noted, Plaintiffs had constructive notice as of April 4, 2012,[22] and actual notice based upon litigation of the validity of the Assignment in the Second Lawsuit. Because Plaintiffs did not bring their UDAP claim based upon the recording of the Assignment within four years, the claim is not timely.

---

[22] A publicly recorded document provides constructive notice where the document itself constitutes evidence of the fraud. *Fields v. Nationstar Mortg. LLC*, 2015 WL 5162469, at *4 (D. Haw. Aug. 31, 2015) (citation omitted).

Second, this cause of action is wholly deficient insofar as it alleges that any communications with the Chase Defendants were unfair or deceptive based upon the alleged use of the pseudonym "Chase." Compl. ¶ 425. Plaintiffs do not provide any details regarding these communications or "important mailings" in their UDAP claim, and even assuming they refer to the 2017 communications, Plaintiffs fail to include any facts demonstrating that the acts were objectively likely to mislead reasonable consumers or that any violation caused actual damages.[23] These sparse allegations fail to state a plausible UDAP claim.

Therefore, Defendants' Motions are granted as to the fifth cause of action. Because amendment of their UDAP cause of action as to any timely, non-precluded claim *may* be possible, the Aminas are granted limited leave to amend this claim in strict compliance with the terms of this Order.

---

[23]To determine whether a practice is deceptive under HRS Chapter 480, courts look to whether it is: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. *Courbat v. Dahana Ranch, Inc.,* 111 Hawaiʻi 254, 262, 141 P.3d 427, 435 (2006). "A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (internal quotation marks omitted). The test is objective, turning on whether the act or omission is likely to mislead consumers. *Id.* In addition, Plaintiff must demonstrate that the violation caused private damage. *Hungate v. Law Office of David B. Rosen*, 139 Hawaiʻi 394, 407, 391 P.3d 1 (2017). HRS Chapter 480 precludes damages for personal injury and emotional distress. *See Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Hawaiʻi 309, 319, 47 P.3d 1222, 1232 (2002). Plaintiffs provide no factual allegations supporting that they have incurred recoverable damages, and merely present conclusory statements.

### F. The Claim for Relief from Judgment Under Rule 60 Is Dismissed

In their sixth cause of action, entitled "Relief From Judgment (FRCP 60(d)(1), (6))," Plaintiffs allege that "U.S. Bank committed fraud upon the court by submitting a forged Assignment" in the Second Lawsuit. Compl. ¶ 429. They do not allege a stand-alone claim in this cause of action, but repeat prior allegations that the Assignment is invalid, and appear to ask this Court to provide relief from the judgment in a separate civil action.[24] To the extent these claims merely attack the validity of the Assignment, they are barred by principles of claim and/or issue preclusion and dismissed with prejudice. Plaintiffs fail to state an independent claim under Rule 60, and the Chase Defendants' Motion is therefore granted.

### G. TILA Section 1641(g) and Regulation Z Claims Are Untimely

The seventh cause of action alleges that the Chase Defendants failed to provide the Aminas with notice of Assignment of the Mortgage within thirty days of

---

[24]Independent actions under Rule 60(d) are "reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of *res judicata*." *United States v. Beggerly*, 524 U.S. 38, 46 (1998). And, demonstrating fraud on the court under Rule 60(d) requires more than simply alleging fraud, misrepresentation or misconduct by an opposing party; it is available only if plaintiff shows fraud that "defiles the court or is perpetrated by officers of the court." *United States v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011). The fraud must rise "to the level of an unconscionable plan or scheme which is designed to improperly influence the court in its decision," *id.*; and plaintiffs must provide "clear and convincing evidence," *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1104 (9th Cir. 2006). *See also Palmer v. Stephens*, 2016 WL 347302, at *3 (D. Haw. Jan. 28, 2016) (dismissing with prejudice independent action brought under Rule 60(d) where plaintiff's allegations "do not come close to rising to this level," and where amendment could not cure the defects).

the transaction, in violation of TILA Section 1641(g) and Section 1026.39 of Regulation Z.   Compl. ¶ 452.   Plaintiffs deny receiving written notice of any transfer as required by Section 1641(g) and seek damages "in an amount to be determined at trial."   Compl. ¶ 459.

Claims for damages under TILA must be brought "within one year from the date of the occurrence of the violation."   15 U.S.C. § 1640(e).   Assuming that (1) the triggering Assignment was recorded April 4, 2012; and (2) the Chase Defendants failed to notify Plaintiffs of the transfer, Plaintiffs' 2018 claim is patently untimely.

Equitable tolling can apply under limited circumstances.   *See King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the . . . nondisclosures that form the basis of the TILA action.").   Plaintiffs, however, have not alleged any basis for tolling.   Moreover, the purported nondisclosures themselves cannot serve as a basis to justify tolling.   *See Teaupa v. U.S. Nat'l Bank*, 836 F. Supp. 2d 1083, 1094 (D. Haw. 2011); *accord Garcia v. Wachovia Mort. Corp*., 676 F. Supp. 2d 895, 896 (C. D. Cal. 2009) ("the mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations").   Indeed, any tolling allegation

would be implausible in light of the fact that the publicly filed notice of assignment is an exhibit in the Second Lawsuit.[25]

The Aminas' TILA Section 1641 and Regulation Z claim for damages is time-barred. Because any attempt to allege tolling would be futile, the seventh cause of action is dismissed without leave to amend.

### H.    Plaintiffs Are Not Entitled To Declaratory or Injunctive Relief

The eighth cause of action, entitled "Declaratory Judgment," requests declarations from the Court that, *inter alia*, "none of the Defendants is entitled to foreclose on the Property," Compl. ¶ 464, and that "the potential Plaintiff in a potential foreclosure case does not exist and thus could not possibly own the debt, note or mortgage," *id*. ¶ 467. To the extent Plaintiffs seek declaratory and injunctive relief as an independent claim, the Court follows the well-settled rule that a claim for such relief, standing alone, is not a cause of action. *See Ramos v. Chase*

---

[25]The recording of the Assignment on April 4, 2012 gave Plaintiffs constructive notice well more than one year before Plaintiffs filed their TILA claim. *Aguirre v. Cal–Western Reconveyance Corp*., 2012 WL 273753, at *6 (C.D. Cal. Jan. 30, 2012) (recording of an assignment "'operates as constructive notice of the contents thereof, to all persons,' including plaintiff" (citation omitted)); *Dela Cruz v. HSBC Bank USA, N.A*., 2013 WL 1759001, at *5 (D. Nev. Apr. 23, 2013) (declining to equitably toll the statute of limitations in a TILA action because the recording of the assignment gave plaintiff constructive notice of the assignment); *see also Vargas v. JP Morgan Chase Bank*, N.A., 30 F. Supp. 3d 945, 949 (C.D. Cal. 2014) (borrower's claim that he did not receive timely notice of assignment was time barred and not eligible for equitable tolling because "equitable tolling is the exception—not the general rule. To allow tolling whenever a plaintiff alleges an improper disclosure would render the TILA limitations period completely meaningless. [Plaintiff] must allege more than the alleged TILA violation itself; the violation and tolling are not one and the same.") (internal citations omitted).

*Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011); *see also Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."); *Ballard v. Chase Bank USA, N.A.*, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (citation omitted). Accordingly, this cause of action fails to state a stand-alone claim upon which relief can be granted. If declaratory or injunctive relief is proper, it will be because the Aminas have met the necessary test for such relief based on an independent cause of action. Defendants' Motions are therefore granted as to Plaintiffs' eighth cause of action.

## III. <u>Limited Leave to Amend Is Granted</u>

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit instructs "that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted).

Portions of the Complaint are dismissed without prejudice, and the Aminas are granted narrow and limited leave to amend to attempt to cure the deficiencies

identified above.   Plaintiffs' claims that were previously adjudicated on the merits in the First and Second Lawsuits and all claims that are time-barred are dismissed *with prejudice*.   The Court CAUTIONS the Aminas that they may not re-allege those claims in any amended complaint.   To be clear, Plaintiffs are permitted limited leave to attempt to cure the specific deficiencies noted in this Order—no new or additional parties, claims, or legal theories are permitted in any amended complaint.

If the Aminas choose to file an amended complaint, they must write short, plain statements identifying: (1) the specific basis of this Court's jurisdiction; (2) the constitutional or statutory right Plaintiffs believe was violated; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiffs' rights; and (6) what specific injury Plaintiffs suffered because of that defendant's conduct.   Plaintiffs must repeat this process for each person or entity that they name as a defendant.   If Plaintiffs fail to affirmatively link the conduct of each named defendant with the specific injury they suffered, the allegation against that defendant will be dismissed for failure to state a claim.

An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading.   *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa*

*Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).   Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed.   *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).

The amended complaint must designate that it is the "First Amended Complaint" and may not incorporate any part of the prior complaint.   Rather, any specific allegations must be retyped or rewritten in their entirety.   Failure to file an amended complaint by **August 6, 2018** will result in the automatic dismissal of this action without prejudice.

## CONCLUSION

For the foregoing reasons, both Chase and MERS' Motion to Dismiss, Dkt. No. 14, and NTC's joinder, Dkt. No. 26, are GRANTED.

The Aminas are granted limited leave to file an amended complaint in accordance with the terms of this Order by **August 6, 2018**.   Claims dismissed *with prejudice* may not be re-alleged in an amended complaint.   The Court CAUTIONS

Plaintiffs that failure to file an amended complaint by **August 6, 2018** may result in the automatic dismissal of this action without prejudice.

IT IS SO ORDERED.

DATED: July 5, 2018 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*Amina v. JPMorgan Chase Bank N.A.*, CV NO. 18-00143 DKW-KSC; **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**