ORIGINAL

Donna Mae Amina
Melvin Keakaku Amina
2304 Metcalf Street 2
Honolulu, HI 96822
(808) 941-0685

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 3 1 2011

at 3 o'clock and 5 min. P.M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

MELVIN KEAKAKU AMINA AND DONNA
MAE AMINA, HUSBAND AND WIFE,

   Plaintiffs,

   vs.

WMC MORTGAGE CORP.;

GENERAL ELECTRIC COMPANY;

MERSCORP, INC.;

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

CHASE HOME FINANCE LLC;

CHASE HOME FINANCE, INC.;

LCS FINANCIAL SERVICES CORPORATION;

UNKNOWN OWNERS OF THE EVIDENCE OF
THE DEBT and/or OWNERS OF THE NOTE;

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 10-00165 JMS KSC

**SECOND AMENDED COMPLAINT**

 **TILA (15 U.S.C. § 1601 et seq.),**
 **Quiet Title,**
 **RESPA (12 U.S.C. § 2601 et seq.),**
 **FDCPA (15 U.S.C. § 1692 et seq.),**
 **FCRA (15 U.S.C. § 1681 et seq.),**
 **Conspiracy to Commit Fraud,**

 **Conspiracy to Commit Fraud**
   **Related To MERS System,**
 **Unjust Enrichment,**
 **Fraud in the Inducement**

**[ Injunctive Relief Requested]**

**[Supplemental State Claims]**

# EXHIBIT C

## Preliminary Statement

1.      Plaintiffs seek a preliminary injunction against an imminent foreclosure sale of their home. The original (2006) loan paperwork for both loans named MERS as mortgagee and WMC as Lender.   At all times relevant to this Complaint, MERS' permission to do business in Hawaii is "suspended."   WMC has not filed an Annual Report in Hawaii since 1997 and has not been in good standing in Hawaii since 1998.   WMC is no longer in business and there has been no assignment in the country property records, thus the principal is unknown or nonexistent.   CHASE HOME FINANCE LLC, which not registered to do business in Hawaii, has served an "Acceleration Warning (Notice of Intent to Foreclose)."   It is unknown how Chase came on the scene.   There was an exorbitant payoff penalty of 6 months of payments.   The servicer for both loans (CHASE HOME FINANCE LLC / CHASE HOME FINANCE, INC.) has refused loan modification.   Servicers are motivated to obstruct workouts because they profit more from late fees and foreclosure.   The usual Pooling and Servicing Agreement and Subservicing Agreement have no provision for workouts (and also require servicers to be registered to do business in the state where the property is located).

2.      In this Complaint, allegations marked (*) are made upon information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.   All other allegations are made of personal knowledge.

## STATEMENT OF THE CASE

3.      This case arises because the Plaintiffs are becoming the victim of an unlawful foreclosure because the Defendants threaten in the near future to foreclose on the home of the Plaintiffs. This foreclosure is based upon a mortgage and note that are no longer held by the same entity or party,

2

2nd AMENDED COMPLAINT

or is based upon a mortgage that was flawed at the date of origination of the loan, because Mortgage Electronic Registration Service (MERS) was named as the beneficiary or nominee of the lender on the mortgages. Further, the loan is the actions of each of the Defendants in violation of various federal and state laws. The Defendants have attempted to foreclose and have actually foreclosed on many homes when they do not have a lawful right to foreclose. Plaintiffs are at imminent risk of losing their home because one or more of the Defendants has served upon her an "Acceleration Warning (Notice of Intent to Foreclose)", and Plaintiffs hereby seek emergency injunctive relief and damages.

4.      Other persons are similarly situated whose homes have been fraudulently and/or unlawfully foreclosed upon by Defendants on MERS mortgages, each such foreclosure having been commenced and advanced in furtherance of the conspiracy pursuant to which every Defendant herein aided and abetted, and/or participated with and/or conspired with the other named Defendants in the wrongful course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

### Jurisdiction and Venue

5.      Jurisdiction is under including but not limited to 12 U.S.C. § 2614;  28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2605(f), 2607(d)(2), 2610, 3416;  15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1601, 1640, 1641(a), 1692k, 1681p. The Plaintiffs request that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue for this action lies in this district since:

3

2nd AMENDED COMPLAINT

(a) Defendants are subject to personal jurisdiction of the State of Hawaii and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

(b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

7.      This matter is properly filed in this District. The claims arose in this District and all Defendants reside and/or do business in this District.

### Parties

8.      Plaintiffs are citizens of Hawaii.

### *LENDER (WMC and GENERAL ELECTRIC)*

9.      Defendant WMC MORTGAGE CORP. is a California corporation which ceased operation in 2007, and is a wholly-owned subsidiary of GENERAL ELECTRIC COMPANY, with offices at 3100 Thornton Avenue, Burbank, CA 91504 and mailing address P.O. Box 54089, Los Angeles, CA 90054, and can be served with process through WMC's registered agent, GENERAL COUNSEL, 6320 CANOGA AVE (TR-28), WOODLAND HILLS, California 91367 or through GE's registered agent, THE CORPORATION TRUST COMPANY, CORPORATION TRUST CENTER, 1209 ORANGE STREET, WILMINGTON, DE   19801.  WMC's current status with the California Secretary of State is "SUSPENDED."  WMC has not filed an Annual Report in Hawaii since 1997 and has not been in good standing in Hawaii since 1998.  Therefore, all loans made in Hawaii by WMC since 1998 are illegal, invalid and unenforceable.

10.     Defendant GENERAL ELECTRIC COMPANY is a Delaware corporation, and can be served with process through its registered agent, THE CORPORATION TRUST COMPANY, address CORPORATION TRUST CENTER, 1209 ORANGE STREET, WILMINGTON, DE

2nd AMENDED COMPLAINT

19801. GE controls WMC to such a degree that WMC is not a separate entity but merely an agent, instrumentality or alter ego of GE.[1]

11.    The above two defendants are jointly and severally liable for the acts of each, and will be referred to collectively as "WMC" and as "Lender."

12.    WMC keeps accounting entries for each of its loans in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity resulting from the loans.  These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006).  These accounting ledger entries show whether or not Plaintiffs received a loan from WMC.  Under the "matching" principle of GAAP, WMC can produce a ledger showing all costs and revenues resulting from each of its loans.  WMC keeps records for all loans in a form ready to produce for government inspection in case of an audit.

---

[1]    The U. S. Supreme Court in U.S. v. Bestfoods, 524 U.S. 51 (1998), explained that "a parent corporation is itself responsible for the wrongs committed by its agents in the course of its business." Quoting a 1929 article written by Justice (then Professor) Douglas, the Court distinguished derivative liability cases "from those in which the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management, and the parent is directly a participant in the wrong complained of." In such instances, explained the Court, "the parent is directly liable for its own actions." The parent does not have to have "acted on its own;" the parent is directly liable for the subsidiary's actions where it has "forced the subsidiary to take the complained-of action, in disregard of the subsidiary's distinct legal personality," or "interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." Thus, the Bestfoods Court distinguished between subsidiary corporate officers who "set the day-to-day operating policies for the company without any need to obtain formal approval from [the parent company]," and those subsidiary officers who "[act] on specific orders" and receive "instructions" from the parent.
    In U.S. v. Days Inn of America, Inc., in which the United States brought an ADA action against a hotel franchiser, the Eighth Circuit applied the Supreme Court's Bestfoods rule that a parent corporation is accountable where it "manage[s], direct[s], or conduct[s] operations specifically related to the violation."
    The Days Inn court held that to bear responsibility for an inaccessible facility, "a party must possess a significant degree of control" over the final design and construction of a facility. The Days Inn decision clarifies the applicability of Bestfoods beyond the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).

2nd AMENDED COMPLAINT

## MERSCORP AND MERS

13.     Defendant MERSCORP, INC. is a Delaware corporation which wholly owns, and is responsible for the actions of, Defendant MERS.  Its shareholders are various companies engaged in the business of mortgage banking.[2]

14.     Defendant MERSCORP, INC. has its principal place of business in Vienna, Virginia and can be served with process through its registered agent, C T Corporation System, 100 S. 5th Street, #1075, Minneapolis MN, 55402.

15.     (*) MERSCORP, INC. has no other function than to own MERS, and conducts no business in its own name.

16.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a nonprofit organization and is a wholly-owned subsidiary of MERSCORP, INC.

17.     MERS is incorporated in Delaware and has its principal place of business in Vienna, Virginia and can be served with process through its registered agent, Sharon Horstkamp, 1818 Library Street, Ste. 300, Reston, VA  20190-0000.  Currently, and at all times relevant to this Complaint, MERS' permission to do business in Hawaii is "suspended."

18.     (*) MERS was created by the mortgage industry to enable high-speed trading of loans, and packaging of loans into pools, via electronic means, without recording any Assignments in the

---

[2] MERSCORP's shareholders include: ABN-AMRO Mortgage Group, Inc.; American Land Title Association; CCO Mortgage Corporation; Chase Home Mortgage Corporate of the Southeast; CitiMortgage, Inc.; Commercial Mortgage Securities Association; Corinthian Mortgage Corporation; Countrywide Home Loans, Inc.; EverHome Mortgage Company; Fannie Mae; First American Title Insurance Corporation; Freddie Mac; GE Mortgage Services, LLC; GMAC Residential Funding Corporation; Guaranty Bank; HSBC Finance Corporation; Merrill Lynch Credit Corporation; MGIC Investor Services Corporation; Mortgage Bankers Association; Nationwide Advantage Mortgage Company; PMI Mortgage Insurance Company; Stewart Title Guaranty Company; SunTrust Mortgage, Inc.; United Guaranty Corporation; Washington Mutual Bank; Wells Fargo Bank, N.A., and WMC Mortgage Corporation.

6

county property records.  MERS' computer software was written by Ross Perot's company, EDS.

MERS possesses user manuals for all such software.

19.     However, from a legal point of view, the computer/electronic aspect of MERS is not

significant. Everything that MERS does, and everything that is done through MERS, could have

been done before the age of computers, using traditional oral and written communication methods.

20.     (*) There is no government agency that regulates or oversees MERS.

21.     (*) MERS has never provided information from its computer system in any court case.

22.     (*) Defendant WMC MORTGAGE CORP. is a member of MERS.

23.     (*) A mortgage company, servicer, or other company that wishes to become a member of

MERS may apply for membership, and after acceptance, receives a MERS Manual and Rules of

Membership and may trade and package loans using MERS' computer system.

24.     (*) Defendant(s) UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or

OWNERS OF THE NOTE is (are) a member of MERS.

### *PURPORTED SERVICER FOR FIRST MORTGAGE*

25.     CHASE HOME FINANCE LLC purports to be the current servicer for the First Mortgage

and the Second Mortgage, and is a Delaware limited liability company with its principal place of

business in New Jersey, and a wholly owned subsidiary of Chase Home Finance, Inc., a Delaware

corporation with its principal place of business in New Jersey.  Chase Home Finance, LLC is the

successor in interest, by merger, to Chase Mortgage Services, Inc. Prior to that merger and its

dissolution, Chase Mortgage Services, Inc. was a Delaware corporation with its principal place of

business in New York.  CHASE HOME FINANCE LLC has offices at 2901 Kinwest Parkway,

Irving, TX 75036-3134 and can be served with process through its registered agent.

7

2nd AMENDED COMPLAINT

26.     Defendant CHASE HOME FINANCE, INC. is the owner of CHASE HOME FINANCE LLC  and is a Delaware corporation with its principal place of business in New Jersey, and can be served with process through its registered agent.

27.     (*) CHASE HOME FINANCE LLC and CHASE HOME FINANCE, INC. are alter egos of the same people.  At all relevant times, CHASE HOME FINANCE LLC worked under the direction  and control of CHASE HOME FINANCE, INC. and all acts of CHASE HOME FINANCE LLC were acts of CHASE HOME FINANCE, INC. and they are jointly and severally liable for acts committed by either one.

***PURPORTED DEBT COLLECTOR FOR SECOND MORTGAGE***

28.     LCS FINANCIAL SERVICES CORPORATION is a Colorado corporation, and can be served with process through its registered agent REGISTERED AGENT SOLUTIONS, INC., address 1188 Bishop St Ste 2212, Honolulu, Hawaii 96813.

***UNKNOWN OWNERS***

29.     (*) Defendant UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE is an unknown entity, which will be named after discovery.

### Factual Allegations:

All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

30.     At all relevant times, Plaintiffs were and are the owner of the property at **2304 Metcalf Street 2, Honolulu, HI  96822** (hereafter "the Homestead"), legally described as:

///

///

8

2nd AMENDED COMPLAINT

## BEING A PORTION OF THE FOLLOWING DESCRIBED LAND:

### SEAVIEW TRACT

### LOT 1

### Manoa, Honolulu, Oahu, Hawaii

Being a portion of royal Patents 4475 and 7789, Land Commission Award 7713, Apana 39 to V. Kamamalu.

Beginning at the Northwest corner of this parcel of land, the Southwest corner of lot 2 of Seaview Tract and on the East side of Hunnewell Street the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUNCHBOWL" being 4625.39 feet South and 9005.94 feet East and running by azimuths measured clockwise from true South:

| | | | | |
|---|---|---|---|---|
| 1. | 274° | 46′ | 91.95 | feet along Lot 2 of Seaview tract; |
| 2. | 4° | 46′ | 82.56 | feet along the remainder of R. P.'s 4475 and 7789, L.C. Aw. 7713, Apana 39 to V. Kamamalu; |
| 3. | 94° | 46′ | 91.95 | feet along the north side of Metcalf Street; |
| 4. | | | | Thence along the northeast intersection of Metcalf Street and Hunnewell Street on a curve to the right with a radius of 20.00 feet, the chord azimuth and distance being: |
| | 139° | 46′ | 28.28 | feet; |
| 5. | 184° | 46′ | 91.95 | feet along the East side of Hunnewell Street to the point of beginning and containing an area of 7,506 square feet, more or less. |

31.    Plaintiffs are, and have been, in continuous possession of the Homestead.

32.    Plaintiffs did not make a forcible entry into the Homestead.

33.    Plaintiffs are not unlawfully holding the possession of the Homestead by force.

34.    Plaintiffs have never sold the Homestead.

35.    Plaintiffs are unsophisticated borrowers.  The broker recognized this and used manipulative tricks.  The broker failed to "lock-in" an interest rate.

36.    Plaintiffs wanted a loan with a down payment.  The loan broker said, "No, we don't want your down payment," and presented Plaintiffs with an 80/20 loan offer: two loans, one for 80% of

9

2nd AMENDED COMPLAINT

the purchase price, and one for 20%. The result was a higher interest rate than necessary, and

unaffordably high payments. The loan broker deceived Plaintiffs about the interest rate and

payment amounts and wasted Plaintiffs' loan-shopping time until Plaintiffs showed up to sign the

loans.

37.     (*) WMC, with its greater experience, knew that the loans were unaffordable and would go

into default. WMC cannot put itself in harm's way and then expect sympathy from this Court.

38.     (*) WMC paid the loan broker a kickback to steer Plaintiffs into those loans.

### THE FIRST AND SECOND MORTGAGES

39.     On Mar 06, 2006, WMC MORTGAGE Corp. recorded as Doc No 2006-042511 a

"MORTGAGE" (MIN 100136300114610198, Loan No. 11461019), ("First Mortgage") dated

2/28/06, naming WMC MORTGAGE Corp. as Lender and "DONNA MAE AMINA AND

MELVIN KEAKAKU AMINA, WIFE AND HUSBAND" as Borrower, to secure "the promissory

note signed by Borrower and dated February 24, 2006 [in the amount of] $880,000.00" ("First

Note").

40.     On Mar 06, 2006, WMC MORTGAGE Corp. recorded as Doc No 2006-042512 a

"MORTGAGE" (MIN 100136300114610289, Loan No. 11461028), ("Second Mortgage") dated

2/28/06, naming WMC MORTGAGE Corp. as Lender and "DONNA MAE AMINA AND

MELVIN KEAKAKU AMINA, WIFE AND HUSBAND" as Borrower, to secure "the promissory

note signed by Borrower and dated February 24, 2006 [in the amount of] $220,000.00" ("Second

Note").

41.     Both Mortgages stated that the payments were to be made to 4828 Loop Central Drive,

Houston, TX 77081-2226. This is the address of Litton Loan Servicing LP.

10

2nd AMENDED COMPLAINT

42.     Each MORTGAGE was a boilerplate adhesion contract drafted by the Lender in which the purported extended consumer credit was subject to a finance charge and was initially payable to the Lender on the face of the Note.

43.     The papers signed by Plaintiffs are not the same as the papers that were recorded at the county recorder.

44.     No HUD-1 Settlement Statement was provided for either loan.

45.     Each Loan was a federally related mortgage loan.

46.     The alleged obligations were secured by the Homestead and principal dwelling of Plaintiffs.

47.     Each MORTGAGE stated: "MERS is a separate corporation that is acting solely as nominee for Lender [WMC MORTGAGE Corp.] and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument."

48.     (*) However, MERS has never owned any beneficial interest under either MORTGAGE. MERS did not provide any capital for either Loan. MERS has never been the recipient of any loan repayment made by Plaintiffs.

49.     (*) MERS had a contract with WMC MORTGAGE CORP.

50.     (*) In that contract, WMC did not designate MERS as nominee with power to foreclose on WMC's behalf. WMC did not authorize MERS to assign the mortgage.

51.     (*) The party for whom MERS was acting as nominee has changed, however MERS conceals the identity of the party for whom MERS was acting as nominee, and falsely represents that MERS is still nominee for the party named in the MORTGAGE.

2nd AMENDED COMPLAINT

52.     (*) When a loan goes into default, or when a loan is the subject of a lawsuit, MERS routinely records an assignment from the first owner – the one named in the Mortgage or Deed of Trust – to the current owner; however, by that time, MERS is no longer acting as nominee for the first owner, and there is in fact no assignment directly from the first member to the current member.  In other words, MERS records a false chain of title.

53.     (*) MERS has gone to great lengths to conceal and hide the beneficial owners and holders in due course of various mortgage loans and pools of loans.  MERS has never directly produced information from the MERS® System to third parties, in discovery or otherwise.

54.     A paper titled "Law & Order MERS" that was prepared and distributed by MERS to counsel in Southeastern States contains the following (emphasis added):

> Question: How should we proceed if the subpoena requires MERS to provide an officer to testify at a hearing?
>
> In most instances, the attorney issuing the subpoena is more interested in the documents than in testimony, but occasionally an officer will need to be produced for a hearing (particularly in bankruptcy matters).  The Member should select a certifying officer who is familiar with the Member's relationship with MERS to act as the witness.  **The witness should be able to briefly explain that he/she is an agent of the servicer and a vice president of MERS, and that MERS holds the mortgage lien in a limited agency capacity for the party with the beneficial interest in the note.**  If the subpoena involves issues regarding the history of MERS, the corporate governance of MERS, or any other matters that are specific to MERS and outside of the details concerning a particular loan or borrower, you should contact the MERS Law Department for additional guidance.
>
> * * *
>
> Question: Will MERS produce information a Member has placed on the MERS® System to a third party in response to a subpoena?
>
> Occasionally, a party to a complex commercial dispute or class action will seek discovery from MERS of information contained on the MERS® System.  **As of the date of the preparation of these materials, MERS has never directly produced information from the MERS® System to third parties.**  Pursuant to Rule 9,

Section 1(b) of the Rules of Membership, **MERS has "no ownership rights whatsoever in or to any information contained on the MERS® System."** It is our position that the information contained on the MERS® System is the private, proprietary property of our Members, and that the information should be produced, if at all, by the Member who owns the information. This approach protects the privacy of the information, and allows our Members to control how and when it is distributed.

55.    Upon information and belief, the above statements by MERS' counsel are true and are hereby alleged.

56.    (*) The information contained in MERS' computer system identifies all investors connected with a given mortgage.

57.    (*) The information contained in MERS' computer system identifies all servicers connected with a given mortgage.

58.    (*) The information contained in MERS' computer system identifies all subservicers connected with a given mortgage.

59.    (*) The information contained in MERS' computer system identifies the document custodian who actually is the entity with physical possession of the note.

60.    (*) The information contained in MERS' computer system is easily produced.

61.    (*) MERS keeps records of due diligence and quality control reports.

62.    (*) MERS keeps records of custodian exception reports.

63.    (*) MERS keeps records of reports of investigations of loss, theft or destruction of notes.

64.    (*) MERS keeps records of the last sign in and sign out of the promissory note via the custodian's records and register.

65.    (*) MERS keeps receipts of the last mailing or transfer of such note, which are generally made via overnight delivery and/or registered mail.

13

2nd AMENDED COMPLAINT

66.     (*) In at least 50% of foreclosure cases, MERS has claimed the note is lost, but has never filed police or insurance reports, and the "loss" fails to be reflected in the documents listed above.

67.     (*) MERS never paid any consideration for either Mortgage.

68.     (*) The Lender knowingly inserted into the documents several false and/or conclusory statements.

69.     (*) No one ever paid any consideration for the aforementioned Notes.

70.     (*) The Notes have subsequently been pledged as collateral for other secured transactions.

71.     The First Note stated: "In return for a loan which I have received, I promise to pay U.S. $880,000.00 ... to the order of ... WMC MORTGAGE Corp. ..."

72.     The Second Note stated: "In return for a loan which I have received, I promise to pay U.S. $220,000.00 ... to the order of ... WMC MORTGAGE Corp. ..."

73.     (*) In fact, Plaintiffs had not received any loan from WMC MORTGAGE Corp.

74.     (*) WMC keeps accounting entries for each Mortgage in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the Mortgage.  These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006).  These accounting ledger entries show whether or not Plaintiffs received a loan from WMC MORTGAGE Corp.

75.     (*) Under the "matching" principle of GAAP, WMC can produce a ledger showing all costs and revenues resulting from each Loan.

2nd AMENDED COMPLAINT

76.    (*) WMC keeps records for all loans, including each Loan, in a form ready to produce for government inspection in case of an audit.

77.    (*) Each Note was endorsed in blank and treated as bearer paper

78.    (*) Each Note was not negotiated to MERS for value.

79.    (*) Each Note was not negotiated to its current holder for value.

80.    Each Loan was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

81.    (*) At all times relevant to this action, WMC regularly extended and offered to extend consumer credit subject to a finance charge or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof, thus WMC is a "creditor" under 15 U.S.C. § 1602(f)(1).

82.    WMC was "the creditor" under 15 U.S.C. § 1635(a).

83.    Each Note stated:

    "Loan" means the loan evidenced by this Note. ... You agree that we are making this Loan directly to you.

84.    (*) In fact, "WMC MORTGAGE Corp." did not make a loan directly to Plaintiffs.

85.    (*) Each Loan was sold before it was funded.

86.    (*) WMC did not lend its assets to Plaintiffs nor for Plaintiffs' benefit.

87.    (*) WMC did not lend the assets of its depositors, investors, sub-lenders, partners, contractors, or any similar third party, to Plaintiffs nor for Plaintiffs' benefit.

88.    (*) WMC did not lend any money to Plaintiffs nor for Plaintiffs' benefit.

89.     (*) WMC did not lend nor provide any "dollars," as defined by Congress, to Plaintiffs nor for Plaintiffs' benefit.

90.     (*) WMC did not lend any Federal Reserve Notes to Plaintiffs nor for Plaintiffs' benefit

91.     (*) WMC did not lend its credit to Plaintiffs.

92.     (*) WMC did not lend its credit for Plaintiffs' benefit.

93.     At closing, WMC failed to make TILA disclosures required by 15 U.S.C. § 1635.

94.     WMC failed to disclose the last date on which Plaintiffs could cancel the loans.

95.     (*) WMC recorded its Mortgage, falsely naming MERS as the original mortgagee.

96.     (*) However, MERS was not the true original mortgagee.

97.     (*) Each Mortgage is part of a loan pool covered by a Pooling and Servicing Agreement, a Master Servicing Agreement, a Subservicing Agreement, a Custodial Agreement, a Trust Agreement, & other agreements to be determined in discovery. That loan pool is insured with both Mortgage Insurance and Credit Default Swaps and the only way to collect is to foreclose. The Lender keeps records of Mortgage Insurance and Credit Default Swaps related to the Mortgages.

98.     (*) WMC is not Owner and Holder of either Note.

99.     On February 3, 2010, CHASE HOME FINANCE LLC mailed to Plaintiff DONNA MAE AMINA a letter titled "Acceleration Warning (Notice of Intent to Foreclose)" related to "Account: 22917306" claiming a past-due amount of $43,363.67.

100.    Plaintiffs have no loan with account number 22917306.

101.    Someone from "Chase" phoned Plaintiff Donna Mae Amina for payment on the Second Loan and said that if it was not paid, they were going to write it off and sell it or assign it to a collection agency.

2nd AMENDED COMPLAINT

102.    On March 22, 2010, Plaintiffs filed this Complaint.

103.    On March 25, 2010 (three days after the filing of this Complaint), Defendant LCS FINANCIAL SERVICES CORPORATION mailed to Plaintiff DONNA MAE AMINA a debt collection letter attempting to collect "Loan #: 22917314, LCS Account #: 483388" in the amount of $235,669.54.

104.    Plaintiffs have no loan with account number 22917314.

105.    On August 2, 2010, LCS Financial called and left a message to call about debt collection.

106.    On August 18, 2010, LCS Financial called and left a message to call about debt collection.

107.    On January 7, 2011, CHASE HOME FINANCE LLC mailed to Plaintiffs a letter titled "Your Recent Partial Payment" referring again to account 022917306, claiming that Plaintiffs are delinquent in the amount of $114,566.71 (which resembles the First Loan), and requesting that payments be made by mail to an address in Phoenix, Arizona or by wire to Rancho, California.

108.    On January 20, 2011, Plaintiffs timely disputed "all or part of the debt" and demanded "verification and validation."

109.    On March 2, 2011, CHASE HOME FINANCE LLC mailed to Plaintiffs a letter titled "Verification of Mortgage" which failed to identify the creditor.  CHASE HOME FINANCE LLC has not yet identified the creditor.

110.    (*) CHASE HOME FINANCE LLC and CHASE HOME FINANCE, INC. are not the owner and holder of either Note, are not agents of the owner and holder of either Note, and have no authorization from that party to foreclose.

111.    (*) The Note is not currently held by a legal entity of the type that is authorized to own and hold Notes (e.g. an individual, corporation, partnership, etc.)

17

2nd AMENDED COMPLAINT

112.    (*) The Holder has discharged the Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

113.    If the identity of the owner and holder of the Note is not established now, someone else may show up later holding the Note and sue Plaintiffs or otherwise attempt to collect.

114.    No Notice of Default, Assignment or other similar document has been recorded.

115.    An unknown principal is now attempting to conduct a wrongful nonjudicial foreclosure with the aid of CHASE HOME FINANCE LLC, and/or other servicers.

## GENERAL ALLEGATIONS

116.    In the United States, home purchases are typically financed by mortgages or loans that are secured by a mortgage and a note which, when executed on behalf of the same entity and held by the same entity as a "note and mortgage," entitle the holder of the note and mortgage to foreclose on the property of the borrower, if the borrower is in default without legal excuse or recourse.

117.    Estimates by consumer agencies forecasted that as many as 2.2 million of the nearly 70 million homeowners in the U.S. were at risk of defaulting beginning in 2008, while a reported 3 million foreclosures occurred in the U.S. in 2008. Upon information and belief, foreclosures to date during calendar year 2009 are at a higher rate than that which occurred during 2008.

118.    From 2003 through 2007, the Defendants entered into mortgages with mortgages and notes that were separated after the execution of the mortgage, the note was sold to an investor who literally and actually provided the funds for funding the loan given to the borrower. Prior to or immediately after the contract was signed by the borrower, the note was funded by a party other than the originator or servicer of the loan.

119.     The Mortgage Electronic Registration Service was created by the Defendants identified herein as co-conspirators in relation to the MERS system with the specific intent that MERS would be named the beneficiary as the nominee of the lender on the mortgages which Plaintiffs were induced into signing.

120.     The foreclosure was initiated against the Plaintiffs by a party with no standing to commence or maintain any foreclosure proceeding and who was a stranger to the purported loan transactions and which party was and is unknown to the Plaintiffs and, moreover, did not fund the loan of the Plaintiffs and are not owed any of the funds to be repaid by the Plaintiffs.

121.     The attempted foreclosure on Plaintiffs' home complained of herein were initiated by Defendants who had and have no lawful right to initiate, advance or maintain any foreclosure action against the Plaintiffs or their home.

122.     All Defendants participated in a conspiracy to cause the Plaintiffs to enter into instruments that would result in the foreclosure of their home, to initiate foreclosure on the Plaintiffs' home without the lawful right to do so; and Defendants have been unjustly enriched by the payments of the Plaintiffs on the notes.

123.     The lenders and investors in mortgage-backed securities, including some of the Defendants, have sought bailout money from the United States government.

124.     The lenders and investors in mortgage-backed securities, including some of the Defendants, have used those funds to repay investors who funded the loans of the Plaintiffs, thus having no liability for the notes and no right to collect on the notes and no right to initiate foreclosures on the Plaintiffs' home.

19

2nd AMENDED COMPLAINT

125. Plaintiffs have a mortgage that states that the beneficiary or the nominee of the lender is MERS.

126. Plaintiffs still live in their home.

127. Plaintiffs have a mortgage with MERS named as the beneficiary or the nominee for the lender.

128. Plaintiffs have received notice that their home will be subjected to foreclosure or sale within the next two to ninety days.

129. Plaintiffs and her family members live in their home.

130. Plaintiffs have attempted unsuccessfully to seek modification of their loans with the servicer (CHASE HOME FINANCE LLC / CHASE HOME FINANCE, INC.), who has failed and refused to modify the terms of the loans.

131. The entity that is giving notice that it will foreclose on the home of the Plaintiffs is not MERS and is not the lender that originated the mortgage.

132. Plaintiffs have no adequate remedy at law.

133. If no injunction is issued, the Plaintiffs will suffer irreparable harm from the loss of their home. If an injunction is issued, Defendants will suffer nothing since no payments are owed to them on account of the notes and mortgages and any foreclosure pursued by them will be and is and has been unlawful.

**FIRST CAUSE OF ACTION - TILA - Truth In Lending Act (15 U.S.C. § 1601 et seq.)
(Against WMC MORTGAGE CORP.; GENERAL ELECTRIC COMPANY; UNKNOWN
OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE)**

134. Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

20

135. (*) The Lender failed to disclose the true identity of the creditor(s) at closing, as required by 15 U.S.C. § 1638(a)(1).

136. WMC provided a total of two copies of the Notice of Right to Cancel at closing.

137. The Notices of Right to Cancel did not exactly match the model Form H-8.

138. The violations alleged above are apparent on the face of the disclosure statement.

139. (*) Defendants deliberately hid the identity of "the creditor" to make it impossible for Plaintiffs to give rescission notice.

140. On February 28, 2006, Plaintiffs timely mailed notice of rescission for each loan at the address given in the loan documents.

141. As a result, the security interest is void.

142. The Lender had a duty to record all necessary documents reflecting the termination of the void security interests within 20 days of receipt of notice of rescission, and is liable for failure to do so.

143. Plaintiffs have the ability to tender the loan proceeds to WMC MORTGAGE CORP. (or whoever the Loan creditor turns out to be after discovery), minus "any money or property that has been given to anyone in connection with the transaction" [3] (including monthly payments and total settlement charges) and setoffs, within the time limit set by the TILA statute and regulations, by arranging for a new loan conditioned on the rescission, and by using other financial resources.

144. As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

---

[3] See 12 C.F.R. §§ 226.15(d)(2) and 226.23(d)(2).

2nd AMENDED COMPLAINT

145.    Plaintiffs did not have a reasonable opportunity to discover the TILA violations. No HUD-1 Settlement Statement was provided for either loan.

146.    Plaintiffs have been induced or tricked by their adversary's misconduct into allowing the filing deadline to pass. Beginning prior to February 2009, the Chase defendants strung Plaintiffs along with false promises to cooperate with loan modification, for both loans, always asking for additional documentation to be faxed, which Plaintiffs did.

147.    Under 15 U.S.C. 1635(e) and 1602(w), under identical circumstances, a person who is refinancing can rescind, but a person who is purchasing cannot rescind.  This exception violates the Equal Protection Clause and is unconstitutional as applied.  Not only does it deny equal protection to purchasers that is afforded to refinancers, but it discriminates on the basis of race and national origin, because relatively few nonwhites and foreigners can hang onto their properties long enough to refinance.  Upon information and belief, Congress and the Lender intended to discriminate on the basis of race and national origin by making rescission available to refinancers but not to purchasers.  Therefore, Plaintiffs have the same right to rescind as if the transaction were a refinance.

### SECOND CAUSE OF ACTION - Quiet Title
**(Against Defendants MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CHASE HOME FINANCE LLC; CHASE HOME FINANCE, INC.; UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE)**

148.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

149. At all times relevant to this Complaint, Plaintiffs were and are in possession and have been in continuous possession of the Homestead, against all the world, and have paid all lawful property taxes thereon.

150. Plaintiffs have superior and legal title to, and other interest in, the Homestead.

151. At all times relevant to this Complaint, Plaintiffs were and are the owner of the Homestead and entitled to such ownership and use without interference by Defendants.

152. WMC and GE made a claim to the Property via a mortgage in the county records which names WMC as the lender.

153. MERSCORP and MERS made a claim to the Property via a mortgage in the county records which names MERS as the mortgagee.

154. CHASE HOME FINANCE LLC / CHASE HOME FINANCE, INC. made a claim to the Property via a statement by LCS in its letter dated March 25, 2010 that "CHASE" owned the Second Loan.

155. Defendants' claims to any right, title or interest in the property are false and without merit.

156. Defendants' purported security interest is void because of the rescission.

157. (*) Defendants are not owners or holders of any promissory note encumbering the Homestead.

158. Plaintiffs bring this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

159. Plaintiffs seek rescission of the loan, Judgment, Order and Decree quieting title to the Homestead in Plaintiffs as of the date the Complaint in this case was filed, and such further equitable relief as the Court deems proper.

23

2nd AMENDED COMPLAINT

160. As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

### THIRD CAUSE OF ACTION
### RESPA - Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.)
### (Against Defendants WMC MORTGAGE CORP.; GENERAL ELECTRIC COMPANY; MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CHASE HOME FINANCE LLC; CHASE HOME FINANCE, INC.)

## COUNT I: YIELD SPREAD PREMIUM

161. Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

162. (*) The Lender paid a "Premium Yield Adjustment," otherwise known as a Yield Spread Premium, to the broker, for no service or work other than the choice of a loan with a high interest rate, in violation of the anti-kickback provision of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA").

163. Institutional lenders normally are not required to disclose a Yield Spread Premium. The reason is that institutional lenders sell their loans in a true "Secondary Market Transaction" sometime after the loan is closed. This means that the loan is sold at a later time and their true "Yield Spread" or additional revenue is not yet known.

164. (*) However, in this case, the Loan was sold before it was funded.

165. (*) The trading among MERS members is not a true "Secondary Market Transaction."

166. (*) Therefore, the Yield Spread was known.

## COUNT II: RESPA KICKBACK

167. Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

2nd AMENDED COMPLAINT

168.    The claim stated in this Count is brought under RESPA, 12 U.S.C. § 2601, et seq. Plaintiffs are a party to a federally related mortgage loan pursuant to 12 U.S.C. §§ 2602(1) and 2607.

169.    As part of the scheme alleged in this Complaint, MERS members including the Lender give, and MERS accepts, kickbacks pursuant to an agreement or understanding that business incident to or part of real estate settlement services involving federally related mortgage loans shall be referred to MERS. The Lender gave such a kickback in this case. Such kickbacks violate 12 U.S.C. § 2607(a) and are not waivable violations.

170.    When a MERS member, including the Lender, originates a federally related mortgage loan, including the loan in dispute, and registers the note and mortgage with MERS, it passes on the $3.95 MERS registration fee to the borrower. It passes on the fee by including it within the fees disclosed on the HUD-1 Settlement Statement.

171.    The MERS member, including the Lender, kicks back to MERS the $3.95 registration fee received from the borrower, including Plaintiffs, upon payment of the settlement costs. This kickback is payment for avoidance of government recording fees for all subsequent transfers of any interest in the mortgage. Such avoidance is made possible by the MERS registration system.

172.    The MERS member, including the Lender, kicks back the MERS registration fee to MERS pursuant to an agreement or understanding that the business of registering all subsequent sales of the note and mortgage should be referred to MERS. Such kickbacks violate 12 U.S.C. § 2607(a).

173.    Such kickbacks occurred in connection with the settlements of the federally related mortgage loans to which Plaintiffs were party.

2nd AMENDED COMPLAINT

174.    Pursuant to 12 U.S.C. § 2607 Plaintiffs are entitled to three times the amount charged for the settlement services involved and Plaintiffs are further entitled to costs and attorneys fees, to be paid by the Defendants.

### COUNT III: RESPA UNEARNED CHARGES

175.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

176.    As part of the scheme alleged in this Complaint, MERS members including the Lender charge the borrower and pass on to MERS, and MERS accepts, the $3.95 MERS registration fee that is assessed to the Lender in connection with federally related mortgage loans. Defendants pass this charge on to the borrower even though the borrower does not benefit from this service. This charge is made to and received from the borrower for services that do not benefit the borrower.

177.    The service actually performed for the borrower is payment of government recording fees. The $3.95 MERS registration fee is a charge for a service other than payment of government recording fees. The charging of this $3.95 MERS registration fee to the borrower, and the giving by MERS members and acceptance by MERS of this fee violates 12 U.S.C. § 2607(b) and is not a waivable violation.

178.    Such charges for a service not actually performed occurred in connection with the settlements of federally related mortgage loans to which Plaintiffs were party.

179.    (*) CHASE HOME FINANCE LLC has not properly applied all payments.

180.    (*) In violation of 12 U.S.C. § 2605, WMC and MERS and CHASE HOME FINANCE LLC failed to give notice to the borrower at the time of transfer.

2nd AMENDED COMPLAINT

181.    (*) In violation of 12 U.S.C. § 2607, the Chase defendants and LCS paid kickbacks for real estate settlement services within one year before the Complaint was filed.

182.    As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

183.    Plaintiffs are entitled to an accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

**FOURTH CAUSE OF ACTION**
**FDCPA - Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)**
**(Against Defendants CHASE HOME FINANCE LLC; CHASE HOME FINANCE INC;**
**LCS FINANCIAL SERVICES CORPORATION)**

184.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth here.

**Count I**

185.    The initial communication was a letter from Defendants CHASE HOME FINANCE LLC and CHASE HOME FINANCE INC dated February 3, 2010, titled "Acceleration Warning (Notice of Intent to Foreclose)" related to "Account: 22917306."

186.    Defendants CHASE HOME FINANCE LLC and CHASE HOME FINANCE INC failed to disclose, within five days of the initial communication, the right to dispute the debt within 30 days, in violation of § 1692 g(a)(3).

187.    Defendants CHASE HOME FINANCE LLC and CHASE HOME FINANCE INC failed to disclose, within five days of the initial communication, the right to have verification/judgment mailed to consumer, in violation of § 1692 g(a)(4).

188.    Defendants CHASE HOME FINANCE LLC and CHASE HOME FINANCE INC failed to state, within five days of the initial communication, that it will provide name and address of original creditor if different from current creditor, in violation of § 1692 g(a)(5).

189.    The letter is essentially an attempt to collect a debt which is not owed to CHASE.

## Count II

190.    The initial communication was a letter from Defendant LCS dated March 25, 2010 (after this lawsuit was filed).    Defendant LCS failed to state, within five days of the initial communication, the name of the creditor to whom the debt was allegedly owed, in violation of § 1692 g(a)(2).  The name was given as "CHASE."  CHASE does not exist.  Upon information and belief, no debt is owed by Plaintiffs to any entity with any name resembling CHASE.

191.    Defendant LCS failed to disclose, within five days of the initial communication, the right to dispute the debt within 30 days, in violation of § 1692 g(a)(3).

192.    Defendant LCS failed to disclose, within five days of the initial communication, the right to have verification/judgment mailed to consumer, in violation of § 1692 g(a)(4).

193.    Defendant LCS failed to state, within five days of the initial communication, that it will provide name and address of original creditor, in violation of § 1692 g(a)(5).

194.    Plaintiffs notified Defendant LCS in writing within thirty days of the initial communication that the debt was disputed and Plaintiffs requested the name and address of the original creditor.

195.    Defendant LCS failed to cease collection efforts until the debt was validated, in violation of § 1692 g(b).

196.    On 7-21-10, Defendant LCS sent a letter attempting to verify the debt.  That letter again misidentified the current creditor as "CHASE," in violation of 15 U.S.C. § 1692e.

2nd AMENDED COMPLAINT

197.   LCS failed to properly verify the debt in the July 21, 2010 letter and made debt collection attempts after that date, in violation of § 1692 g(b).

198.   LCS falsely represented that "CHASE" owned the loan.

199.   The above-described activities constitute false, deceptive, and misleading representation and means in connection with the collection of the alleged debt, in violation of 15 U.S.C. § 1692e.

200.   These activities constitute unfair and unconscionable means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692f.

201.   These activities constitute "unfair or unconscionable means to collect or attempt to collect any debt" in violation of 15 U.S.C. § 1692f.  Congress intended the FDCPA to apply here:

> This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal . . . .

House Report 95-131, 95th Cong., 1st Sess., p. 8. Accord, Senate Report No. 95-382, p. 4, reprinted at 1997 USCCAN 1695, 1699.

## Count III

202.   CHASE HOME FINANCE LLC's January 7, 2011 letter was a debt collection attempt, for a loan that resembles the First Loan, and failed to identify the creditor.

203.   Plaintiffs' January 20, 2011 letter disputed the debt and requested verification & validation.

204.   CHASE HOME FINANCE LLC failed to identify the creditor in its March 2, 2011 letter or subsequently.

205.   As a result of these wrongful actions, Plaintiffs suffered damages to be determined at trial.

**FIFTH CAUSE OF ACTION**
**FCRA - Fair Credit Reporting Act (15 U.S.C. § 1691 et seq.)**
**(Against Defendants CHASE HOME FINANCE LLC; CHASE HOME FINANCE, INC.;**
**LCS FINANCIAL SERVICES CORPORATION)**

2nd AMENDED COMPLAINT

206.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth here.

207.    (*) Defendants are persons who furnish information to credit reporting agencies under 15 U.S.C. § 1681s-2. Defendants are corporations, therefore persons. Defendants furnished information to Experian regarding Plaintiffs' loan.

208.    Plaintiffs notified Experian of inaccuracies in their credit report.

209.    (*) Experian notified Defendants.

210.    (*) Defendants, upon notification, failed to investigate.

211.    (*) Defendants negligently and willfully failed to comply with provisions of the Fair Credit Reporting Act ("FCRA") including, without limitation, failing to comply with 15 U.S.C. § 1681s-2(b). Defendants made false statements to credit bureaus and neglected to make true statements to credit bureaus, including but not limited to an excessive amount of debt for which Plaintiffs were tricked and deceived into signing, resulting in Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

212.    As a result of Defendants' wrongful actions, Plaintiffs suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### Conspiracy to Commit Fraud
### (Against all Defendants)

213.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

2nd AMENDED COMPLAINT

214. LCS falsely represented by phone and by mail (the March 25, 2010 letter) that "CHASE" is the owner of the Second Loan, when according to the public record WMC is the owner of the Second Loan, and in reality a non-Chase party, Defendant UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE, is the owner of the Second Loan.

215. All Defendants formed an association to conspire to deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs' qualifying and entering into loan agreements which would eventually result in Plaintiffs' inability to make payments.

216. Upon information and belief, Defendants intended that the Plaintiffs' loans would be packaged with other loans and sold on the secondary market, resulting in a profit to Defendants.

217. Defendants knew prior to their origination of the loan or acceptance of the loan for servicing and subsequent transfer of the loan that Plaintiffs were not qualified to make the payments under the loan; however, Defendants knew or should have known that Plaintiffs would rely and did rely on Defendant's representations as alleged herein related to Plaintiffs' ability to repay the loan or to refinance the loan in taking the loan and signing the documents.

218. Defendants violated Federal and State laws as alleged herein in procuring Plaintiffs' signatures on the loans.

219. Defendants' legal objective of packaging the loans made to Plaintiffs with other loans and selling the loans was accomplished by illegal means in procuring the loans because of Defendants' violation of federal and state laws as alleged herein.

220. Upon information and belief, Defendants knew that the loan would be subject to foreclosure as a result of Plaintiffs' inability to make payments on the loan as a result of Plaintiffs' inability to qualify to refinance the loans at a later date because of Defendants' false reporting of

negative credit information, and thus the Defendants committed acts which constitute unlawful equity stripping.

221.    Upon information and belief, the balloon payment was not properly disclosed to Plaintiffs.

222.    Defendants intended that Plaintiffs would default on the loan and Defendants would be in a position of seizing Plaintiffs' home in foreclosure, unlawfully depriving Plaintiffs of their home.

223.    Defendants, and each of them, in furtherance of the conspiracy and agreement alleged herein, acted in a concerted manner to target Plaintiffs and similarly situated individuals as borrowers, to misrepresent the loan terms and/or to misrepresent Plaintiffs' qualification for the loans, knowing that such action or actions would result in Defendant's ultimate possession of the homes of the Plaintiffs and others following foreclosure.

224.    As a result of Defendants' conspiracy described herein, Plaintiffs have suffered injuries which include loss of reputation and a decreased credit rating which has, or will, impair Plaintiffs' ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of their home and other financial losses according to proof.

225.    Defendants' conspiracy to unlawfully deceive Plaintiffs into taking the loans alleged herein was willful and wanton, justifying an award of punitive damages.

226.    As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

## SEVENTH CAUSE OF ACTION
### Conspiracy to Commit Fraud Related To MERS System
### (Against All Defendants)

227.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

32

2nd AMENDED COMPLAINT

228.    Upon information and belief, Defendants, and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate, and actively engage in fraudulent and predatory lending practices perpetrated on Plaintiffs as alleged herein by the actions of the Defendant conspirators as part of the business policies and practices of each Defendant conspirators in participating in the MERS system.

229.    Upon information and belief, the Defendant conspirators are or have been shareholders in MERS and/or members of the MERS system and, as to Defendant conspirators, have, through their employees and agents, served as members of the Board of Directors of MERS, and participated in the design and coordination of the MERS system described in this complaint.

230.    Upon information and belief, the Defendant conspirators have conspired among themselves and with other unknown parties to:

231.    A. Develop a system of earning profits from the origination and securitization of residential loans without regard for the rights of Plaintiffs, by engaging in predatory and deceptive residential lending practices as alleged in this complaint above; and

232.    B. In furtherance of the system referred to immediately above, the Defendant conspirators intentionally created, managed, operated, and controlled the Defendant MERS for the specific purpose of MERS being designated as a sham "beneficiary" in the original mortgages securing those loans, including the loan made to Plaintiffs and others by the originators of the loans which originators executed the mortgages and each of the Defendants herein; and

233.    C. Defendant conspirators intentionally created, managed, operated, and controlled the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or

2nd AMENDED COMPLAINT

impossible for Plaintiffs and other victims of such industry-wide predatory policies and practices to identify and hold responsible the entities responsible for Defendants' unlawful actions.

234. Upon information and belief, Defendant conspirators, through creation of the MERS system alleged herein, adopted and implemented residential lending underwriting guidelines for use in Hawaii and in other states which:

235. A. Were intended to, and did, generate unprecedented profits for the Defendant conspirators and their co-conspirators at the expense of Plaintiffs and other persons who were fraudulently induced by the Defendant conspirators and their coconspirators into taking out residential loans that were known by the Defendant conspirators and their co-conspirators, at the time the loans were originated, were likely to result in default; and,

236. B. Were likely to result in foreclosure on those loans and loss by Plaintiffs and other borrowers of their homes, with reckless disregard and intentional indifference by the Defendant conspirators and their co-conspirators of the likelihood of such foreclosure.

237. Upon information and belief, the MERS system was created for the unlawful purpose of hiding and insulating the brokers and originators of predatory toxic loans from accountability and liability by creating an entity which simultaneously informed all lenders who originated loans that named MERS as the beneficiary of the following:

238. A. MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the mortgage, and that

239. B. MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

240.    Upon information and belief, the intent and purpose of the Defendant conspirators and their co-conspirators in the creation, management, operation, and control of MERS was, without limitation, to make it impossible for the borrowers, their attorneys, the courts, the government, and anyone other than the Defendant conspirators who created and controlled MERS, to identify the actual beneficial owner of any particular loan or the property which was the collateral securing that loan until such time, if any, that foreclosure action was initiated. As a result, Plaintiffs, and others, were deprived of the right to attempt to modify the toxic loan, as the true identity of the actual beneficial owner was intentionally hidden from Plaintiffs and others.

241.    Upon information and belief, the Defendant conspirators' actions in creating the MERS system, which was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiffs in violation of the Fair Housing Act, the Truth in Lending Act, and the Home Ownership and Equity Protection Act, created a system to unlawfully deprive Plaintiffs of Plaintiffs' interest in their home.

242.    Upon information and belief, Defendant conspirators utilized funds received as part of the Troubled Asset Relief Program (TARP), the TALF program, and other government payouts to further the conspiracy to defraud Plaintiffs, and others, to deprive them of their money, to deprive them of their property, to unlawfully foreclose on loans made to borrowers, to pay investors in the mortgage-backed securities which were comprised of the loans made to Plaintiffs and others, and to pay bonuses to employees and officers of the Defendant conspirators based on their devising the sub-prime mortgage-backed products which were securitized by loans of the type issued to Plaintiffs and others, and collateralizing and selling such products in the United States and abroad.

35

2nd AMENDED COMPLAINT

243.    As a result of Defendant conspirators' conspiracy described herein, Plaintiffs have suffered injuries which include loss of reputation, and a decreased credit rating which has, or will, impair Plaintiffs' ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of Plaintiffs' home, and other financial losses according to proof, including attorneys' fees and costs incurred in this matter.

244.    All Defendants who are presently engaged in foreclosure procedures against the Plaintiffs herein know and have reason to know that they have no entitlement to any payments by the Plaintiffs and that the Defendants have no lawful right to foreclose upon the Plaintiffs' home.

245.    Defendant conspirators' actions were wanton, willful, and reckless thereby justifying an award of punitive damages against Defendant conspirators, and each of them.

246.    As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

### EIGHTH CAUSE OF ACTION
### Unjust Enrichment
### (Against All Defendants)

247.    Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

248.    Plaintiffs plead this claim in the alternative in the event the contracts are found void.

249.    (*) Defendants' deceptive scheme as alleged herein unjustly enriched Defendants, and each of them, to the detriment of Plaintiffs, by causing Defendants, and each of them, to receive excessive monetary payments.

250.    (*) WMC, GE, MERSCORP, MERS and the Chase Defendants received excessive payments from an unknown lender or lenders using the Note as collateral, possibly having pledged

the same Note multiple times; from an unknown insurance company pursuant to a wrongful claim; from the TARP program; and from other parties yet to be identified. LCS received excessive monetary payments from the Chase Defendants.

251. Specifically, Plaintiffs have been injured in the property and right to peaceful enjoyment of their primary residence in a variety of ways, including but not limited to: Plaintiffs were handicapped in understanding the terms of those loans. This constituted a misrepresentation that caused Plaintiffs to make her monthly payments from the cash that represented the equity in their home to the Defendants. Moreover, upon information and belief, the variety of additional and separate payments charged for services and other items tangential to the loan were prohibitive. The result is that Plaintiffs assumed financial burdens that she would not otherwise have assumed, and paid Defendants more than she justly should have owed.

252. The loans made to borrowers were then repackaged, reassigned, and/or resold, each with a margin of profit for the assignee/buyer that would not otherwise have existed had the borrowers not been deceived by the original terms of the loan and/or the lack of disclosures as alleged herein.

253. Plaintiffs continue to pay an inflated interest rate that, upon information and belief, would not have been agreed to but for the failure to understand the documents and otherwise disclose the true terms and costs of the loans, tangential services, and out-of-pocket costs.

254. Upon information and belief, all payments made to the Defendants servicing the mortgages of the Plaintiffs are not due.

255. The Defendant who has purportedly serviced the loans of the Plaintiffs did not fund the loans, did not lend any money to the Plaintiffs, is not an agent of the owner and holder of the Note, and has no lawful right to foreclose upon the home of the Plaintiffs if the payments are not made

by the Plaintiffs according to the notes that were executed by the Plaintiffs at the time the loan was received.

256. Upon information and belief, all sums advanced for loans to the Plaintiffs by investors have been repaid, settled, satisfied or otherwise are no longer outstanding.

257. Accordingly, Defendants, and each of them, should be ordered to return all funds obtained as a result of their deceptive scheme to Plaintiffs.

258. As a result of Defendants' wrongful actions, Plaintiffs suffered damages to be determined at trial, for which Defendants are jointly and severally liable.

**NINTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Against Defendants WMC MORTGAGE CORP.; GENERAL ELECTRIC COMPANY;**
**MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)**

259. Plaintiffs incorporate those paragraphs of this Complaint listed above under "Factual Allegations" as if fully set forth in this claim.

260. (*) On the closing documents, MERS falsely claimed to be the mortgagee, and WMC falsely claimed to be the lender.

261. Defendants, through its agents, failed to disclose the material terms of the loans and incidental services to Plaintiffs, by, inter alia, failing to explain the fact that Plaintiffs were not qualified to enter the loans on the terms stated and failed to advise the Plaintiffs of the fact that Defendants had no lawful right to foreclose upon the homes of the Plaintiffs.

262. Defendants concealed the true terms of the loans, and the risks of the transactions, including, but not limited to, negative amortization, prepayment penalty provisions, the risk of

default and the risk of foreclosure from Plaintiffs and failed to advise the Plaintiffs that the Defendants had no lawful right to foreclose upon their home.

263.    Defendants misrepresented the ability of Plaintiffs to qualify for the loans.

264.    (*) The numbers and other information on the loan closing documents presented to Plaintiffs does not match the information given to the servicer.

265.    Defendants knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into the loans.

266.    Defendants intended to induce Plaintiffs into reliance upon these representations and failures to disclose.

267.    Defendants failed and refused to advise the Plaintiffs that the Defendants had not funded the loans and that no payments were due to the Defendants by the Plaintiffs and that the Defendants had no lawful right to sell the Plaintiffs' home at a sale in foreclosure nor any right to deprive the Plaintiffs of their home by any means.

268.    But for the failure to disclose the true and material terms of the transactions that began the loans and the failure to disclose that the Defendants had no right to foreclose upon the home of the Plaintiffs, that Plaintiffs would lose their home, Plaintiffs could have read the agreements and additional documents and would have been alerted to issues of concern. Defendants' intentional misrepresentations, and the failure to disclose the material terms of the transaction and the failure to state that the Defendants have no right to collect payments from the Plaintiffs nor any right to foreclose on their home, induced Plaintiffs to enter into the loans as alleged herein.

**Prayer for Relief:**

WHEREFORE, Plaintiffs pray this court enter an order providing relief as follows:

39

269.    Plaintiffs pray this honorable Court take jurisdiction of this case.

270.    Enjoin, immediately, all Defendants, during the pendency of this action, and permanently thereafter, from recording any mortgages regarding the Homestead; from selling, assigning or transferring mortgages or obligations relating to the Homestead; from instituting, prosecuting, or maintaining nonjudicial or judicial foreclosure proceedings against the Homestead; from otherwise encumbering the Homestead; from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiffs; or from otherwise taking any steps to deprive Plaintiffs of ownership and/or enjoyment of their home.

271.    Award to Plaintiffs $1,000,000.00 damages and their reasonable costs, disbursements and prejudgment interest.

272.    Declaratory judgment that the alleged contract is unconscionable.

273.    Declaratory judgment that Plaintiffs have clear title to the property, free from any encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiffs' property, or in the alternative, reformation of the contract.

274.    An accounting from each Defendant of all funds handled in any way concerning the loans.

275.    A Judgment and Decree for rescission of the loan, punitive damages, actual damages, attorney fees and costs; a Judgment and Decree quieting title in favor of Plaintiffs; Order all Defendants to rescind and cancel the alleged loan in its entirety and return to Plaintiffs any and all of their original signed documents; Order all Defendants to take all action necessary to terminate any security in the Homestead created under the transaction and that the Court declare all such security void, including but not limited to the aforementioned mortgage.

276.    An award of judgment entitling Plaintiffs to all remedies set forth in 12 U.S.C. § 2607 and

18 U.S.C. § 1964(c), and all other remedies that equitably and reasonably flow from Defendants'

breaches of federal law and the obligations that arise therefrom;

277.    A Judgment and  Decree in favor of Plaintiffs against Defendants, actual damages in an

amount to be proven at trial, statutory damages, other general and consequential damages, punitive

damages, money judgment in an amount sufficient to retire the contract;

278.    For award of damages against Defendants and each of them on Plaintiffs' claims as

applicable under state and federal law as alleged above in an amount to be shown at trial;

279.    For an award of costs as provided by law;

280.    For an order of rescission on behalf of Plaintiffs;

281.    For an order of restitution on behalf of Plaintiffs;

282.    For a temporary restraining order and preliminary and permanent injunction prohibiting

Defendants, and their officers, agents, employees, servants, and attorneys, and those persons in

active concert or participation with any of them or each of them, as specifically alleged above,

from transferring any interest in the subject properties, from proceeding with any foreclosure

action as to the Plaintiffs' residence and/or proceeding with any collection action against Plaintiffs;

283.    For a declaratory judgment holding that Plaintiffs' rights were violated as alleged above;

284.    That Plaintiffs have and recover from the Defendants pre-judgment and post-judgment

interest as may be determined by statute and rule;

285.    That this Court grant such other and further relief as it deems just and proper.

286.    Finally, Plaintiffs are not attorneys and are inexperienced in procedure as practiced in the

Federal Courts.   If this submission is found wanting in one or more particulars, it is incumbent

41

2nd AMENDED COMPLAINT

upon the Court to inform Plaintiffs of the deficiencies, their specifics and assist the Plaintiffs in

correcting the submission, and the Plaintiffs hereby respectfully request such assistance.

Executed on: May 31, 2011

_____          _____
Donna Amina, Plaintiff Pro Se          Melvin Amina, Plaintiff Pro Se
2304 Metcalf Street                    2304 Metcalf Street
Honolulu, HI 96822                     Honolulu, HI 96822
(808) 941-0685                         (808) 941-0685

2nd AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

On the date last written below, I served a true copy of the foregoing document upon the following parties in this action by First Class U. S. mail postage prepaid:

WMC Mortgage Corp.
General Electric Company
Merscorp, Inc.
Mortgage Electronic Registration Systems, Inc.
c/o  Mr. Sean Smith,
c/o  Ms. Patricia McHenry
c/o Cades Schutte
1000 Bishop St., 12th Fl.
 Honolulu, HI  96813-4216

Chase Home Finance LLC
Chase Home Finance INC
c/o Mr. David Gruebner
c/o Mr. Jeffrey H.K. Sia
c/o Ayabe Chong Nishimoto Sia & Nakamura LLLP
Pauahi Tower
1003 Bishop St., Ste 2500
Honolulu, HI  96813-4216

LCS Financial Services Corporation
c/o Becky T. Chestnut
c/o McCorriston Miller Mukai MacKinnon LLP
Five Waterfront Plaza Ste 400
500 Ala Moana Blvd
Honolulu, HI 96813

Executed on: May 31, 2011                    _____
                                                            (signed by person mailing)

2nd AMENDED COMPLAINT

43