Donna Mae Amina, Pro Se
Melvin Keakaku Amina
2304 Metcalf Street 2
Honolulu, HI 96822
(808) 949-5215

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 9 2018

at _10_ o'clock and _37_ min. _PM_
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MELVIN KEAKAKU AMINA AND DONNA MAE AMINA, HUSBAND AND WIFE, | ) ) ) | Case No. CV 18-00143 DWK-KSC (Breach of Contract) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WMC MORTGAGE CORP.; et al., | ) ) | JUDGE: Hon. Derrick K. Watson |
| Defendants. | ) | TRIAL: None Set. |

---

**RESPONSE TO [43] DEFENDANTS JPMORGAN CHASE BANK, N.A., Individually and as Servicer of the JPMORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2; JPMORGAN CHASE & CO.; J.P. MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN MORTGAGE ACQUISITION CORP.; J.P. MORGAN SECURITIES LLC; and U.S. BANKNATIONAL ASSOCIATION, as Trustee for J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006- WMC2, ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2006-WMC2'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, FILED AUGUST 20, 2018**

---

Plaintiffs Donna Mae Amina and Melvin Keakaku Amina respond to [43] DEFENDANTS

JPMORGAN CHASE BANK, N.A., Individually and as Servicer of the JPMORGAN

MORTGAGE ACQUISITION TRUST 2006-WMC2; JPMORGAN CHASE & CO.; J.P.

MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN MORTGAGE ACQUISITION

CORP.; J.P. MORGAN SECURITIES LLC; and U.S. BANK NATIONAL ASSOCIATION, as

Trustee for J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET

BACKED PASS THROUGH CERTIFICATES, SERIES 2006-WMC2'S MOTION TO DISMISS

FIRST AMENDED COMPLAINT, FILED AUGUST 20, 2018.

(Judicial notice)

The [43-1] MEMORANDUM IN SUPPORT OF MOTION ("Memorandum") states on

page 2:

> The Defendants hereby request that the Court take judicial notice of the
> **files, records, and findings** in the two prior lawsuits filed by the Plaintiffs relating
> to this property [sic] and the mortgages at issue. Federal Rules of Evidence Rule
> 201 allows a court to take judicial notice of "a **fact**...

However, **"files, records and findings"** are not facts. This request is improperly framed, as

Defendants do not specify what **fact**[s] they wish the Court to take judicial notice of.

The Memorandum states on page 5-10:

> The mortgages at issue in the First Lawsuit and the Second Lawsuit were the
> exact same mortgages. As part of the First Lawsuit, the Court made the following
> statements about the mortgages at issue in this case: "As alleged in the SAC, in
> February 2006, Plaintiffs entered into two mortgage loans from WMC, one for
> $880,000, and another for $220,000, to purchase the subject property... it is
> undisputed that the mortgages at issue in the First Lawsuit and the Second Lawsuit
> are the same.
> ... there is no question that the Plaintiffs are asserting claims arising from
> the same property and mortgages that were at issue in the First Lawsuit and the
> Second Lawsuit. ...

However, the property in the instant case is different from the property in the First Lawsuit and the

Second Lawsuit. Compare the legal descriptions in the respective Complaints (Exhibits C & D

attached to the Defendants' Memorandum, pages 8-9 and 8 respectively; [40] Amended

2

Complaint, pages 21-23).

The Memorandum states on page 6:

As part of the Second Lawsuit, the Court made the following statements...
Accordingly, it is undisputed that the mortgages at issue in the First Lawsuit and the
Second Lawsuit are the same. ...

However, it is not necessary to resort to a statement from a previous court order. The [40]

Amended Complaint states:

7. The Mortgage recorded as Document No. 2006-042511 and the corresponding
Note will be collectively referred to as "the disputed loan" or "the loan in dispute."

So the mortgage at issue in this case is Document No. 2006-042511. The complaint in the First

Lawsuit states:

39. On Mar 06, 2006, WMC MORTGAGE Corp. recorded as Doc No 2006-042511
a "MORTGAGE" (MIN 100136300114610198, Loan No. 11461019), ("First
Mortgage") ...

The Second Lawsuit never identifies a Mortgage.

In addition, the defendants in the current lawsuit are different.

The Memorandum states on page 19:

Notwithstanding that this Court found the claim to be barred by res judicata
because, "Plaintiffs' first cause of action to quiet title to the Property was raised
before and adjudicated by the district court in the Second Lawsuit," Plaintiffs again
raise the same claim without alleging any new facts to support it.

However, the defendants in the current Quiet Title action are different. See the respective captions.

Page 20 of the Memorandum cites Niutupuivaha v. Wells Fargo Bank, N.A., which cites In

re Dowsett Trust, 7 Haw. App. 640, 646, 791 P.2d 398, 402 (1990) for the proposition that under

Hawai'i law, the "concept of privity has moved from the conventional and narrowly defined

3

RESPONSE TO [43] MTD

meaning of mutual or successive relationships to the same rights of property to merely a word used to say that the relationship between one who is a party of record and another is close enough to include that other within res judicata."

However, this is circular reasoning, or a circular definition: in order to determine whether a party is close enough to be included within res judicata, we look to whether the parties are in privity; and the Dowsett court merely tells us that they are in privity if they are close enough. There are no facts or criteria to guide our inquiry.

The Memorandum states on pages 20-21:

> This Court has already found that privity exists between the defendants in the current lawsuit and the defendants' names in Plaintiffs' prior lawsuits. See Dkt. No. 21, pp. 25-26.

However, Docket Number 21 is a Scheduling Conference Statement.

In addition, although the total set of parties may be the same, the factual allegations against each party are not the same, in other words the parties have switched roles by purporting to assign the Note and Mortgage. The Quiet Title claim in the First Lawsuit (against Defendants MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CHASE HOME FINANCE LLC; CHASE HOME FINANCE, INC.; UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE) stated (see Exhibit C attached to the [43-1] Defendants' Memorandum):

> 152. WMC and GE made a claim to the Property via a mortgage in the county records which names WMC as the lender.
> 153. MERSCORP and MERS made a claim to the Property via a mortgage in the county records which names MERS as the mortgagee.
> 154. CHASE HOME FINANCE LLC / CHASE HOME FINANCE, INC. made a claim to the Property via a statement by LCS in its letter dated March 25, 2010 that "CHASE" owned the Second Loan.

However, the current litigation is not about the Second Loan[1], therefore the claim previously made

by Chase Home Finance, LLC does not result in any privity with JPMorgan Chase Bank, N.A.

successor by merger to Chase Home Finance, LLC; in other words, the instant lawsuit is

distinguished from the First Lawsuit in the following way: the First Lawsuit alleges that Chase

Home Finance, LLC had an interest in the Second Loan but not in the First Loan, whereas in the

instant lawsuit, JPMorgan Chase Bank, N.A. successor by merger to Chase Home Finance, LLC is

alleged to have an interest in the First Loan but not in the Second Loan. **In the First Lawsuit, only**

**WMC and GE and MERSCORP and MERS made a claim to the First Mortgage.**

The Quiet Title claim in the Second Lawsuit (against THE BANK OF NEW YORK

MELLON, FKA THE BANK OF NEW YORK and U.S. BANK NATIONAL ASSOCIATION.

AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET

BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC2) stated (see Exhibit D

attached to the [43-1] Defendants' Memorandum):

> 50. Defendants have made claims to Plaintiffs' property, as detailed in paragraphs 2
> through 6 and 31 through 33 above.

Specifically (see Id.):

> 2.    The Bank of New York Mellon claimed an interest in the property,
> exceeding $75,000 in value, by causing an agent (Larry Thode of Chase Home
> Lending) to mail to Plaintiffs a letter dated March 2, 2011 stating: "Re: Account
> Number: *****7306 ... Your loan was sold into a public security managed by The
> Bank of New York and may include a number of investors. ... The address of your
> investor is: 101 Barclay Street Flr 4W, New York, NY 10286, JPMAC 2006-
> WMC2, Pei Yan Huang." A true copy of that letter is attached to the [38] First
> Amended Complaint as Exhibit B.

---

[11] See [32] Order on Motion to Dismiss from Case No. 18-00143 DKW-KSC: "The district court explained the
Mortgage transactions at issue in the litigation: ... (The mortgage loan for $220,000 has been released, leaving the one
for $880,000 at issue.)"

RESPONSE TO [43] MTD

5

3.        101 Barclay Street Floor 4W, New York is the address of The Bank of New York. The letter identifies "your investor" as "JPMAC 2006-WMC" (J.P Morgan Mortgage Acquisition Corp. 2006-WMC2) (hereafter "JPM").

4.        (*) In April of 2006, JPMorgan Chase Bank, N.A. swapped its corporate trust unit for The Bank of New York Co.'s retail and small business banking network. The "Your Loan" referred to by Mr. Thode, if it existed, was part of the assets being swapped from JP Morgan to The Bank of New York.

4-1.      As stated in the webpage http://www.secinfo.com/d1z2hd.u46.htm:

(b) On October 1, 2006, The Bank of New York acquired portions of
        JPMorgan Chase Bank, National Association's corporate trust
        business. Through this acquisition The Bank of New York became the
        successor in interest to JPMorgan Chase Bank, National Association
        as Securities Administrator for the Issuing Entity and J.P. Morgan
        Trust Company, National Association as Custodian for the Issuing
        Entity.

4-2.      This transfer of interest was required to be reflected in the Hawaii's property records by recordation of Assignment of Deed of Trust.

4-3.      No such transfer of interest was reflected in the Hawaii's property records by recordation of Assignment of Deed of Trust.

4-4.      (*) The relevant loan pool might be under the #637 MLMI 2006-WMC2 the Merrill Lynch Mortgage Investors Trust, Series 2006-RM1 Pooling & Servicing Agreement dated as of March 1, 2006 between Merrill Lynch Mortgage Investors, Inc., Depositor, Wilshire Credit Corporation, Servicer, and Lasalle Bank National Association, Trustee for the Merrill Lynch Mortgage Investors Trust, Series 2006-WMC2.

4-5.      (*) The relevant loan pool might be J.P Morgan Mortgage Acquisition Corp. 2006-WMC2.

4-6.      The Bank of New York Mellon also made a claim, exceeding $75,000 in value, by causing its agent JPM to mail a letter from its agent Chase Home Finance LLC, dated February 3, 2010 titled: "Acceleration Warning (Notice of Intent to Foreclose)."

5.        By mailing those two letters through its agents, Defendant improperly seeks to foreclose on the subject property.

6.        Thus, <u>BONYM</u> claims ownership of a Note encumbering the Homestead. This claim is improper because Defendant is not owner or holder of any such Note, see paragraphs 7, 35, 38.

And:

31.      On March 2, 2011, Larry Thode of Chase Home Lending mailed a letter to Plaintiffs stating: "Re: Account Number: *****7306 ... Your loan was sold into a public security managed by The Bank of New York and may include a number of investors. ... The address of your investor is: 101 Barclay Street Flr 4W, New York,

NY 10286, JPMAC 2006-WMC2, Pei Yan Huang." A true copy of that letter is in the record as an attachment to Declaration [29].

32.   (*) In mailing that letter, Larry Thode and Chase Home Lending acted as agent of BONYM, therefore BONYM is really the one claiming that "[y]our loan" "was sold into" the J.P. Morgan Mortgage Acquisition Corp. Trust 2006-WMC2. Therefore, BONYM made a claim by sending the letter through its agent.

32-1.   By mailing that letter through its agent, Defendant improperly seeks to foreclose on the subject property.

32-2.   Plaintiffs received a letter dated February 3, 2010 titled: "Acceleration Warning (Notice of Intent to Foreclose)," from JPM's agent Chase Home Finance LLC. That letter stated: "4. If you fail to cure the default within thirty-two (32) days from the date of this notice, Chase Home Finance LLC will ... commence foreclosure proceedings, all without further notice to you." A true copy of that letter is attached to the [38] First Amended Complaint as Exhibit A.

32-3.   (*) In mailing that letter, Chase Home Finance LLC acted as agent of BONYM, therefore BONYM is really the one giving notice of intent to foreclose. Therefore, BONYM made a claim by sending the letter through its agent.

33.   By mailing, through its agent, the "Acceleration Warning (Notice of Intent to Foreclose)," Defendant improperly seeks to foreclose on the subject property.

Thus, **in the Second Lawsuit, only The Bank of New York Mellon and "The Bank of New York Co.'s retail and small business banking network" made a claim to the First Mortgage.**

The only role played by Chase Home Finance LLC was to act as agent of BONYM to mail a letter.

The Quiet Title claim in the instant lawsuit states (see Exhibit D attached to the [43-1]

Defendants' Memorandum):

209. The paragraphs above under "Factual Allegations" through and including "Damages" are hereby incorporated as if fully set forth.
214. There are persons unknown, claiming by, through, or under "CHASE."
215. There are persons unknown, claiming by, through, or under one or more of the Defendants.

Specifically:

9. [footnote] **The current claimants are "CHASE" as servicer; US Bank as trustee; JPMorgan as nominal beneficiary; the Certificateholders as real parties in interest; some other Chase entity.** However, **BONYM is no longer a claimant.**
180. Plaintiffs never applied for the loan described in the Note which was filed as Document

7

RESPONSE TO [43] MTD

No. 142-1 and as Document 144-4 in Case No. 1:11-cv-00714-JMS-BMK.

181. That Note describes a balloon payment.

182. Instead, Plaintiffs applied for a fully amortizing 30-year fixed-rate loan.

185. Plaintiff did not receive a loan before February 24, 2006 (the date on Document No. 142-1 and as Document 144-4 in Case No. 1:11-cv-00714-JMS-BMK and also the date on recorded Document No. 2006-042511 "Mortgage").

186. The records of the purported 'receiving' account will show that no funds came in before the date and time of the purported signature on the Note (February 24,

188. Subsequent to the filing date of the operative Complaint in the Second Lawsuit, the loan in dispute was sold to either Mortgage Resolution Servicing, LLC, S&A Capital Partners, Inc., or 1st Fidelity Loan Servicing, LLC.

189. Plaintiff has begun negotiations with Larry Schneider [a principal of Mortgage Resolution Servicing, LLC, S&A Capital Partners, Inc., and 1st Fidelity Loan Servicing, LLC, see ¶¶ 159] to work out a mutually agreeable agreement.

190. Subsequent to the filing date of the operative Complaint in the Second Lawsuit, the loan in dispute has been paid by PMI insurance.

191. Subsequent to the filing date of the operative Complaint in the Second Lawsuit, the loan in dispute has been "repurchased" according to the terms of the PSA.

192. The loan in dispute in this case is not currently owned by any Chase entity.

193. The disputed loan currently is not in the Mortgage Loan Schedule of JP MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2.

**In the instant lawsuit, only "CHASE" as servicer; US Bank as trustee; JPMorgan as nominal beneficiary; the Certificateholders as real parties in interest; and some other Chase entity made a claim to the First Mortgage.** The Certificateholders are not in privity with any of the past litigants.

In addition, the claims of the instant case could not have been brought earlier. The Second Lawsuit was filed on November 28, 2011, and the Second Amended Complaint against U.S. Bank on October 19, 2012. On April 4, 2012 (after litigation began in Case No. 11-00714-JMS-BMK), an Assignment was filed, as A-44770919, from MERS (as nominee for WMC, ISAOA) to U.S. Bank (as trustee). The Aminas argued that they could not have brought their claims November 28, 2011 based upon the April 4, 2012 Assignment, taking the position that "The state of facts

RESPONSE TO [43] MTD

considered in a lawsuit is the state of facts that existed as of the date of the filing of the initial complaint." In [32] Order on page 20, the Court attempted to rebut this by citing *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (emphasis added) (agreeing "that a bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed is appropriate") for the proposition that "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." However, that 2017 case did not determine the law in 2011-2012.

At any rate, **the Assignment does not control who has the right to foreclose; the Note does.** Only a person entitled to enforce the Note may foreclose. The First and Second Lawsuits never alleged (nor had reason to allege) that the "current claimants" (named in footnote 2 on page 3 as: "CHASE" as servicer; US Bank as trustee; JPMorgan as nominal beneficiary; the Certificateholders as real parties in interest; some other Chase entity) are persons entitled to enforce the Note. The Second Amended Complaint states:

> 167. None of the Defendants is a person entitled to enforce any promissory note encumbering the Homestead.
> 168. None of the Defendants is the agent of a person entitled to enforce any promissory note encumbering the Homestead.

The Memorandum states on page 31:

> Thus, Plaintiffs do not and cannot dispute that the loan at issue in this case was, at the latest, in place or consummated by March 6, 2006.

However, the loan is "consummated" when funds are transferred; this has not yet happened, as alleged in the SAC:

> 127. If there was any money lent or paid on Plaintiffs' behalf, then money from a non-disclosed third party (the investors) was sent through conduits to hide the origination of the funds for such loan.

RESPONSE TO [43] MTD

128. All Defendants possess an Assignment and Assumption Agreement.

129. If there was any money lent or paid on Plaintiffs' behalf, then the closing agent used that money not for the originator of the funds (the investors) but for a sham nominee entity with no rights to such loan — all as specified in the Assignment and Assumption Agreement.

130. The reason the foreclosing parties do not allege they are holders in due course, is that they must prove purchase and delivery for value, as set forth in the PSA within the 90 day period during which the JPMAC Trust could operate.

131. No loan encumbering Plaintiffs' property made it into the PSA Trust.

140. All Defendants keep accounting entries for each of their loans in a "general ledger," showing all changes to Assets, Liabilities and Owner's Equity resulting from the loans.

141. These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006).

142. These accounting ledger entries will show that Plaintiffs did not receive the loan that Defendants claim they did.

143. These accounting ledger entries will show that Plaintiffs did not receive any loan from WMC MORTGAGE CORP.

144. These accounting ledger entries will show that Plaintiffs did not receive any loan secured by the Property.

In regard to the Statute of Limitations (HRS 480), the first that Plaintiffs learned about the Assignment was docket [142-4] in Case No. 1:11-cv-00714-JMS-BMK on 10/20/2014, therefore the Complaint in the instant case was filed within 4 years. The Second Amended Complaint states:

5. Defendants fraudulently concealed information, including but not limited to the identity of the owner of the Note, causing Plaintiffs to be unaware of their causes of action within the applicable statutes of limitations, until June 17, 2014.

6. Defendants fraudulently concealed the identity of person(s) who is/are liable for the within claims from the knowledge of Plaintiffs until June 17, 2014.

9. Plaintiffs made payments to CHASE that were not credited to Plaintiffs' account and were not forwarded to the proper party.

Paragraph 9, quoted above, refers to payments that were made after the filing of the operative Complaint in the Second Lawsuit.

RESPONSE TO [43] MTD

*A COURT MAY NOT TAKE JUDICIAL NOTICE OF THE TRUTH (OR FALSITY) OF*

*PUBLIC RECORDS*

The Memorandum requests that Court take judicial notice of certain public records.

However:

For a fact to be judicially noticed, "indisputability is a prerequisite." <u>Hennessy v. Penril</u>

<u>Datacomm Networks,</u> 69 F.3d 1344, 1354 (7th Cir. 1995). The power to judicially notice facts "is

to be exercised by courts with caution. . . . Every reasonable doubt upon the subject should be

resolved promptly in the negative." <u>Brown v. Piper</u>, 91 U.S. 37, 42-43 (1875).

The Memorandum states: "Federal Rules of Evidence Rule 201 allows a court to take

judicial notice of "a fact ..." However, the Memorandum never requests the Court to take judicial

notice of any **facts**.

Similarly, the Memorandum states: "[i]n the context of a motion to dismiss, a court may

take judicial notice under Fed. R. Evid. 201 of 'matters of public record' ..."

The factual "matters" appropriate for judicial notice would be the existence of the public

records in question, and the language used, but not the truth (or falsity) of their contents.

"Taking judicial notice of a document is not the same as accepting the truth of its contents

or accepting a particular interpretation of its meaning." <u>Joslin v. HA.S. Ins. Brokerage,</u> 184 Cal.

App. 3d 369, 374 (1986). "[T]he taking of judicial notice of the official acts of a governmental

entity does not in and of itself require acceptance of the truth of factual matters which might be

deduced there from, since in many instances what is being noticed, and thereby established, is no

more than the existence of such acts and not, without supporting evidence, what might factually be

associated with or flow there from." (citations omitted). <u>Mangini v. R. J Reynolds Tobacco Co.</u>, 7

Cal. 4111 1057, 1062 (1994) (emphasis added). While courts can take judicial notice of public

records, they do not take notice of the truth of matters stated therein. <u>Love v. Wolf</u>, 226 Cal. App.

2d 3 78, 403 (1964). In addition, "when judicial notice is taken of a document ... the truthfulness

and proper interpretation of the document are disputable." <u>StorMedia, Inc. v. Superior Court</u>, 20

Cal. 4111 449, 457, fn. 9 (1999). A California court considered the scope of judicial review of a

recorded document in <u>Poseidon Development, Inc. v. Woodland Lane Estates, LLC</u>, 152

Cal.App.4th 1106 (2007):

> [T]he fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. For example, the First Substitution recites that Shanley `is the present holder of beneficial interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact, because it is hearsay and it cannot be considered not reasonably subject to dispute." (Id. at p. 1117.)

See also <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that district

court **improperly** took judicial notice of disputed facts recited within public record documents).

**This case was cited by the Memorandum (page 5) to support taking judicial notice of the**

**facts recited within public record documents.**

"Courts may take judicial notice of publications introduced to 'indicate what was in the

public realm at the time, not whether the contents of those articles were in fact true.'" <u>Premier</u>

<u>Growth Fund v. Alliance Capital Mgmt.</u>, 435 F.3d 396, 401 n.15 (3d Cir. 2001); accord <u>Heliotrope</u>

<u>Gen. Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 981 n.118 (9th Cir. 1999) (taking judicial notice "that

the market was aware of the information contained in news articles submitted by the defendants.").

"These publications meet the standards for admissibility set forth in Federal Rule of

Evidence 201(b). Accordingly, we take judicial notice of them solely as an indication of what

information was in the public realm at the time." <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 578 F.3d 1016, 1022 (9th Cir. August 19, 2009). Further, "the Museum fails to point to any authority which holds that a motion to dismiss based on a statute of limitations may be granted on the basis of facts judicially noticed, rather than facts apparent on the face of the complaint. ... Unless it is clear that the complaint could not be saved by amendment, dismissal with prejudice and without leave to amend is not appropriate. Accordingly, Saher's complaint **should not have been dismissed** without leave to amend." Id. at 1031.

     In <u>United States v. 14.02 Acres of Land</u>, the District Court took judicial notice of the Department of Energy National Transmission Grid Study (May 2002), and

> "it referred to the report only as background material, without relying on it to resolve any factual dispute. We therefore conclude that the district court did not abuse its discretion in taking judicial notice of the DOE Study for the limited purpose for which the court considered it."

     The case of <u>Disabled Rights Action Comm. v. Las Vegas Events, Inc.</u>, 375 F.3d 861, 866 n. 1 (9th Cir 2004) was [107] dismissed with prejudice after [94] notice of voluntary dismissal by the plaintiff. On appeal, the key phrase is:

> [Defendant Las Vegas] Events has filed an **unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing agreements are documents of the University System, a state entity.

Footnote 1 of <u>Disabled Rights</u> states:

> The district court record includes only a redacted License Agreement indicating that Events contracted with University System for permission to present the Rodeo at the Center every year from 1993 through 2000. The License Agreement that is currently in effect was not part of the district court record. Events has filed an **unopposed motion** for judicial notice of an unredacted copy of the licensing agreement in effect at the time the district court ruled on the joinder motion, as well as of the current licensing agreement. We grant the motion. These licensing

RESPONSE TO [43] MTD

13

agreements are documents of the University System, a state entity. Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other **undisputed matters** of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice matters of public record **unless the matter is a fact** subject to reasonable dispute); Kottle v. N.W. Kidney Ctrs., 146 F.3d 1056, 1064 n. 7 (9th Cir.1998) (holding that state health department records were properly judicially noticed); Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may take judicial notice of records and reports of state administrative bodies), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

Disabled Rights relies on Lee v. City of Los Angeles, which **reversed** judicial notice:

> More importantly, the district court's decision **to dismiss** plaintiffs' federal claims was rooted in defendants' factual assertions. **In granting defendants' motions, the [district] court** assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, **took judicial notice of the truth of disputed factual matters**, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. **We therefore also reverse** the district court's dismissal of plaintiffs' § 1983 claims ...

At any rate, the proposition (that "a court may judicially notice matters of public record" such as deed of trust, substitution of trustee, election to sell and other recorded documents) is ambiguous as it is not clear whether the Disabled Rights court took judicial notice of the "matters of public record" (i.e. the existence of the documents) or of the truth of their contents.

To the extent that the contents of Defendants' documents are not alleged in the Complaint, the Branch rule does not apply to those documents. See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994):

> ... **documents whose contents are alleged in a complaint** and whose authenticity no party questions, but which are not physically attached to the pleading, may be **considered** in ruling on a Rule 12(b)(6) ...

To "consider" means to examine a document (e.g. to determine whether it is defamatory), not to assume its contents true. Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005).

Here, the contents of the documents at issue are not alleged in the Complaint, therefore the

rule of Branch does not apply to those documents.

The Court may take judicial notice of the dates, parties, and legally operative language of

these documents, **but not the truth of various factual representations made in the documents**.

Permito v. Wells Fargo Bank, 2012 WL 1380322, *2 (N.D. Cal. Apr. 20, 2012).

The Ninth Circuit, in the 14.02 Acres case, stated:

[10] The district court also did not abuse its discretion in taking judicial notice of
the Department of Energy National Transmission Grid Study (May 2002) ("DOE
Study"), which was not included in the pleadings, and referring to it as background
material in its order granting the government's motion for judgment on the
pleadings. ... Judicial notice is appropriate for records and "reports of administrative
bodies." Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir.
1954). The district court considered the DOE Study, which is clearly a "report[ ] of
[an] administrative bod[y]." Id. Further, it **referred to the report only as
background material, without relying on it to resolve any factual dispute. We
therefore conclude** that the district court did not abuse its discretion in taking
judicial notice of the DOE Study for the limited purpose for which the court
considered it.

The Ninth Circuit explicitly stated that its approval of the district court's judicial notice of the

public record was because it "referred to the report only as background material, without relying

on it to resolve any factual dispute." Here, by contrast, Defendants wish to use the disputed records

to resolve a factual dispute.

The extent of the discussion of this issue in Valasquez is:

Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of these
documents as they are matters of public record. See W. Fed. Sav. v. Heflin, 797
F.Supp. 790, 792 (N.D. Cal.1992) (taking judicial notice of documents in a county
public record, including deeds of trust); see also Mack, 798 F.2d at 1282 (on a
motion to dismiss, a court may properly look beyond the complaint to matters of
public record).

The case relied on, <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) was only about "state administrative records" and states:

> South Bay requested the district court to take judicial notice of the state administrative records attached to the motion to dismiss as exhibits. ... a court may take judicial notice of facts outside the pleadings. <u>Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.</u>, 245 F.2d 67, 70 (9th Cir.1956); 5 C. Wright & A. Miller, Federal Practice & Procedure, Sec. 1363 at 659-60 (1969). [footnote: Mack, himself, relied on this precedent in requesting the district court to take judicial notice of the same administrative records in opposing the motion to dismiss his pendent state law claim.] Moreover, a court may take judicial notice of "records and reports of administrative bodies." <u>Interstate Natural Gas Co. v. Southern California Gas Co.</u>, 209 F.2d 380, 385 (9th Cir.1953).

<u>Heflin</u> relies on <u>Grant v. Aurora Loan Servs., Inc.</u>, No. CV 09-08174, 20 2010 WL 3517399, at *3 (C.D. Cal. Sept. 10, 2010) (citing numerous cases where the court took judicial notice of assignments of deeds of trust, notices of default, and notices of trustee's sale). <u>Grant</u> (in which there was no dispute about the trustee's deed, and the other documents noticed were certificates of incorporation, certificates of good standing, and lists of corporate officers) relies on <u>14.02 Acres</u>, and states:

> Aurora requests that the court take judicial notice of the following documents: the trustee's deed on sale for the Woodland Hills property, the Federal Stock Charter for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order Approving Aurora Loan Services as an Operating Subsidiary of Lehman Brothers Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB, a certification by the Delaware Secretary of the State authenticating the certificate of incorporation for Aurora Loan Services Inc., filed May 15, 1997, Aurora's certificate of conversion from a corporation to an LLC, and a certificate of amendment changing Aurora's Certificate of Formation to reflect its designation as a limited liability company.

> The [Grant] court likewise takes judicial notice of the documents defendants proffer regarding Aurora's incorporation and conversion to an LLC - the Federal Stock Charter for Lehman Brothers Bank FSB, the Office of Thrift Supervision's Order Approving Aurora Loan Service as an Operating Subsidiary of Lehman Brothers Bank, the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB, the certification by Delaware Secretary of State authenticating the certificate of incorporation for Aurora Loan Services Inc. filed May 15, 1997, Aurora's certificate of conversion from a corporation to an LLC, and

the certificate of amendment recording the change of Aurora's corporate form and designation in its Certificate of Formation. See FED. R. EVID. 201(b) (stating that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); see also McCall v. Scott, 239 F.3d 808, 814 n. 3 (6th Cir. 2001) ("[W]e take judicial notice of the Restated Certificate of Incorporation"); McMichael v. U.S. Filter Corp., No. ED CA 99-182VAP, 2001 WL 418981, *8 (C.D. Cal. Feb. 23, 2001) (taking judicial notice of a certificate of incorporation filed in Delaware); Redding v. Freeman Products, Inc., No. 94 C 398, 1995 WL 410922, *2 (N.D. Ill. July 10, 1995) (taking judicial notice of certificates of good standing filed with the Illinois Secretary of State); Access 4 All v. Oak Spring, Inc., No. 504CV75OCGRJ, 2005 WL 1212663, *2 n. 16 (M.D. Fla. May 20, 2005) (taking judicial notice of the records of the Florida Department of State, Division of Corporations, which reflected that one plaintiff was an officer and director of the other); In re Teledyne Defense Contracting Derivative Litigation, 849 F.Supp. 1369, 1383 (C.D. Cal. 1993) (stating that "[p]laintiffs' claim for negligent breach of fiduciary duty against the Directors is barred by the Corporation's Certificate of Incorporation (of which this Court may take judicial notice)"); see also Banks v. Consumer Home Mortgage, Inc., No. 01-CV-8508 (ILG), 2003 WL 21251584, *6 n. 7 (E.D.N.Y. Mar. 28, 2003) ("Plaintiffs submitted a public record on file with the Secretary of State for Georgia, where CHM lists Michael Ashley as the Chief Financial Officer of CHM. This Court can take judicial notice of this official filing by CHM").

Footnote 37 of Grant states:

As the complaint refers to or necessarily relies on records related to the sale of plaintiff's property, and as neither party disputes the authenticity of the records, they may also be considered under the incorporation by reference doctrine.

## *DOCUMENTS ARE NOT FACTS*

Defendants have requested the Court to take judicial notice, not merely of "facts" (F.R.E. 201), but of documents. See Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642 (7th Cir. July 21, 2011) (judicial notice declined because the movants "sought judicial notice not of particular discrete facts, but of a number of whole documents.") Yet Defendants do not explain what factual propositions are supposed to be supported by these documents.

The Court may take judicial notice of the existence of documents in the public record, and

of the language of those documents. The Court may not, however, at this stage, take judicial notice

of the truth or falsity of the contents of those documents.

The Federal Rules of Evidence, Rule 201(b) states:

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The **existence** and **language** of the documents within the public record can be accurately

and readily determined by consulting the records maintained by their official custodian.

Long before the effective date of the Federal Rules, a controversy raged on whether judicial

notice of adjudicative facts should be confined to substantially indisputable facts or to facts that are

unlikely to be disputed. Even the evidence greats were divided on the issue: Professors Morgan

and McCormick argued that judicial notice should be confined to indisputables[2] while Professors

Thayer, Wigmore, and Davis contended that judicial notice should extend to facts that are

somewhat less absolute.[3] Both sides muster cogent arguments to support their positions and both

contend that the weight of existing case law supports their views.[4] A substantial split also exists

among the states on this issue.[5] In providing that "[a] judicially noticed fact must be one not

---

[2] See MCCORMICK'S HANDBOOK I, supra note 9, § 330, at 710·11 (taking issue with the Wigmore-Thayer view of judicial notice and arguing that "the weight of reason and the prevailing authority" dictate that judicial notice be confined to indisputable facts); John T. McNaughton, Judicial Notice-Excerpts Relating to the Morgan-Wigmore Controversy, 14 VAND. L. Rev. 779, 779 (1961) (noting that Morgan's view restricts judicial notice to "patently indisputable" matters).

[3] See Kenneth C. Davis, A System of Judicial Notice Based on Fairness and Convenience, in PERSPECTIVES OF LAW 69 (Roscoe Pound et al. eds., 1964), at 76-78 (propounding the Wigmore-Thayer view and arguing that trial judges should entertain evidence which contradicts judicially noticed facts); McNaughton, supra note 48, at 805 (concluding that the Wigmore-Thayer view allows courts to judicially notice matters which are "somewhat disputable but unlikely to be disputed").

[4] See McNaughton, supra note 48, at 796 n.3.

[5] See Carla A. Neely, Note, Judicial Notice: Rule 201 of the Federal Rules of Evidence, 28 U. FLA. L. Rev. 723, 758 nn.203-04 (1976) (citing decisions of several states).

RESPONSE TO [43] MTD

subject to reasonable dispute,"[6] the Federal Rules followed the Morgan-McCormick view requiring substantial indisputability. The Advisory Committee's note on the federal rule stated that this more stringent standard was based upon "the theory that these considerations call for dispensing with traditional methods of proof only in clear cases."[7]

In Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005), the issue was whether a certain photograph and caption of Evel Knievel, which included the word "pimp" and which was posted on ESPN's website, was defamatory – not whether the contents of the documents incorporated by reference were true.[8]

Plaintiffs hereby question the authenticity of all of Defendants' proffered documents.

The court should at most take judicial notice of the existence of Defendant's documents and of the language used, but should not assume the truth of any of their contents.

The key portion of Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice matters of public record unless the matter is a fact subject to reasonable dispute) is:

> In granting defendants' motions, the court assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. We therefore also reverse the district court's dismissal of plaintiffs'§ 19S3 claims alleging violations of the First, Fourth, and Fourteenth Amendments on these independent grounds. ...

> Here, defendant NYSDCS attached several exhibits to its motion to dismiss, including declarations from three NYSDCS employees. ...

---

[6] FED. R. EVID. 201(b).

[7] FED. R. EVID. 201 advisory committee's note, subdiv. (b).

[8] Knievel is "an odd case for a court to cite for the proposition that it could take judicial notice when (a) the majority didn't explicitly take judicial notice; and (b) the dissent had a pretty good argument that the majority could not have taken judicial notice." –Asst. Prof. Colin Miller, John Marshall School of Law (Chicago)

19

RESPONSE TO [43] MTD

In granting defendants' motions to dismiss, ... the court stated "this case apparently presents the relatively unique situation of an innocent person who attempted to pass himself off as an escaped prisoner." Neither the Original Complaint nor the First Amended Complaint contain any allegation that Kerry Sanders ever told anyone that he was Robert Sanders, let alone that he wanted to pass himself off as Robert Sanders. Thus, for purposes of the Rule 12(b)(6) motions to dismiss, there was no basis for the district court to make the factual finding that Kerry Sanders "attempted to pass himself off as [the] escaped prisoner" Robert Sanders.

... the district court also erred by taking judicial notice of disputed matters. The court took judicial notice of two documents: (1) the Waiver of Extradition form, according to which Kerry Sanders purportedly "intelligently, knowingly, and voluntarily" waived his right to challenge his extradition and admitted being Robert Sanders; and (2) the transcript of the extradition hearing at which Kerry Sanders stated that he purportedly understood the rights he was giving up by signing the waiver.

... the district court had authority under Rule 201 to take judicial notice of the fact of the extradition hearing, the fact that a Waiver of Extradition was signed by Kerry Sanders, and the fact that Kerry Sanders purportedly waived his right to challenge his extradition to New York as "Robert Sanders."

But the court did more than take judicial notice of undisputed matters of public record. The court took judicial notice of disputed facts stated in public records. Indeed, the court relied on the validity of Kerry Sanders's Waiver of Extradition in dismissing plaintiffs' § 1983 claims at the pleading stage. As the district court stated: "Sanders personally waived his right to contest extradition and informed the court and counsel that he was, in fact, the Robert Sanders sought in New York." ...

Here, the district court incorrectly took judicial notice of the validity of Kerry Sanders's waiver, which was as yet unproved. ...

Accordingly, we hold that the district court erred in granting the City's motion to dismiss plaintiffs' § 1983 claims under the First, Fourth, and Fourteenth Amendments by relying on extrinsic evidence and by taking judicial notice of disputed matters of fact to support its ruling.

The disputed facts in <u>Lee</u> were whether Kerry Sanders' waiver was valid. There is no indication that the <u>Lee</u> plaintiff disputed any of those facts. Therefore, <u>Lee</u> contradicts the principle urged by Defendants: that judicial notice supposedly must be taken unless the

RESPONSE TO [43] MTD

opposing party puts some contrary evidence before the court—within the time limit for a response to a motion and without opportunity for discovery, no less.

## CONCLUSION

The Second Amended Complaint states a claim upon which relief can be granted. The Motion should be denied.

In the alternative and without waiving the foregoing, leave to amend should be given, because amendment would NOT be futile as there are facts which Plaintiffs have yet to allege (for example, when the Note was allegedly sold to a Larry Schneider business, how it was allegedly fraudulent, and when Chase demanded and accepted money.).

Executed on this 19th day of October, 2018.

/s/ _____
Donna Mae Amina, Pro Se

/s/ _____
Melvin Keakaku Amina, Pro Se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the following date, I served a copy of the

foregoing on the following parties by fax and/or U.S. first class mail:

MICHAEL R. MARSH
MARK G. VALENCIA
Case Lombardi & Pettit
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Attorneys for Defendant
**NATIONWIDE TITLE CLEARING, INC.**

CRYSTAL K. ROSE, ESQ.
ADRIAN L. LAVARIAS, ESQ.
GEORGIA ANTON, ESQ.
Bays Lung Rose & Holma
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Attorneys for Defendants
**J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2;
CHASE; J.P. MORGAN CHASE & CO.; J.P. MORGAN CHASE
BANK N.A.; J.P. MORGAN CHASE BANK, N.A. s/b/m CHASE
HOME FINANCIAL LLC, J.P. MORGAN ACCEPTANCE
CORPORATION; J.P. MORGAN MORTGAGE ACQUISITION
CORP.; J.P. MORGAN MORTGAGE ACQUISITION CORP. 2006-
WMC2; J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC2 A; J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-
WMC2, ASSET-BACKED PASS-THROUGH CERTIFICATES,
SERIES 2006-WMC2; J.P. MORGAN SECURITIES INC.;
MERSCORP HOLDINGS, INC.; and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.**

DATED:  October 19, 2018

Kanani Amina

RESPONSE TO [43] MTD